## 55691. TANNER v. REBEL AVIATION, INC. et al.

DEEN, Presiding Judge.

Howard Tanner, d/b/a Howard Tanner Egg Farm, filed suit against Rebel Aviation, Inc. (Rebel), and other former owners of a 1955 Aero Commander aircraft and against certain mechanics and inspectors alleging that negligent maintenance, repair and inspection of the aircraft had caused him to sustain $47,000 in damages. In a previous appearance of this case before this court, we held that the trial court had personal jurisdiction over only one of the out-of-state residents, Rebel, and that Tanner had stated a cause of action against Rebel for negligence in repairing, inspecting and keeping proper records on the aircraft as required by 14 CFR, § 91.163 et seq. *Shellenberger v. Tanner,* 138 Ga. App. 399 (227 SE2d 266) (1977). A jury trial was held, but the lower court directed a verdict for Rebel at the close of plaintiff's evidence. Judgment was entered on the verdict, and Tanner appeals.

Rebel purchased the airplane from Vactor H. Sanford on May 31, 1973, and was its nineteenth owner after it was manufactured in 1955. On July 13, 1973, Rebel sold it to Aviation Management, Inc. (Aviation), an Augusta, Georgia, firm. One of the conditions of the sales contract required Rebel to have a Federal Aviation Administration (FAA) annual inspection performed before delivery of the airplane to Aviation. Rebel had the inspection conducted at its own facilities on July 13, 1973, by an FAA authorized inspector who certified that the airplane had undergone an annual inspection and that it was in airwor-

thy condition. Appellant, a licensed commercial pilot and airframe mechanic with thirty years experience, purchased the airplane in an "as is" condition from Aviation on January 10, 1974. Prior to making the purchase, appellant's son, a licensed pilot, and Tom T. Fellows, Jr., a licensed commercial pilot, flew to Augusta, inspected the aircraft and its log books, and took a test flight. Both men testified that they noted the damage and repairs to the undercarriage revealed in the log books, but were unconcerned because the plane had undergone an annual inspection six months earlier. After the men recommended the purchase of the airplane to appellant, he viewed it (but did not conduct a detailed inspection), and took a thirty-minute test flight with Aviation's president at the controls. He examined the log books during the flight and also noted the repair work done to the undercarriage, but testified that he was unconcerned because the annual inspection certified the aircraft as airworthy. Approximately eighteen days after purchase, appellant's son was flying the plane and had completed about ten normal landings on that day when it suddenly became uncontrollable on the ground after landing. It was placed in an authorized repair facility where it was inspected by certified mechanics who found the aircraft to be unairworthy because of damage to vital parts concealed in the undercarriage.

The log books reveal that the airplane sustained damage to its undercarriage which was repaired on September 20, 1964. Later entries refer to nose gear damage caused by inadvertent retraction of the landing gear while the plane was on the ground. The most recent references to this problem indicate that a mechanic checked the retraction of the landing gear and certified the airplane to be in airworthy condition on January 31, 1971, and that on November 21, 1971, the nose gear was repaired. Annual inspections, which certified the airplane to be in airworthy condition, were conducted on August 1, 1972, and July 13, 1973. From the time of the August, 1972, annual inspection until the aircraft was purchased by Rebel, the log books reveal only that the altimeters were overhauled, reinstalled, and inspected, and that the engines received routine maintenance such as oil changes and new spark plugs. There are no entries

in the log books indicating that the airplane was repaired during the forty-three days that it was owned by Rebel, except for an entry in the "Engine Log" on July 13, 1973, indicating the maintenance work done at the time of the annual inspection.

1. Appellant contends that a clear question of fact existed as to whether Rebel was negligent in failing to maintain the aircraft in an airworthy condition. He argues that 14 CFR, § 91.163, which provides in part: "The owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition. . ." imposed an absolute duty on Rebel as owner of the Aero Commander to maintain it in airworthy condition and that Rebel did not meet this duty because the annual inspection was improperly conducted and that breach of this federal regulation constituted negligence per se.

In the *Shellenberger* case, supra, this court held that as Rebel did not sell the airplane to Tanner, or have any dealings with him, appellant failed to state a claim for fraudulent deceit in concealing a material fact and that the complaint alleged only a cause of action in tort for negligence. Tanner also could not recover for a breach of a duty which arises solely from a sales contract because there was no privity of contract with Rebel. However, Tanner argues that Rebel's violation of certain Federal Aviation Regulations constitutes negligence per se. Therefore, an examination of the relevant regulations is in order.

In addition to the duty to maintain the aircraft, each owner or operator must have his airplane inspected for airworthiness every 12 months (every 100 hours of service time if it is operated for hire) and every 14 months for altimeter system checks. 14 CFR, §§ 91.169, 91.170. The 12-month inspection is required to be either an annual inspection in accordance with 14 CFR, Part 43, and the aircraft approved for service by a person authorized under § 43.7, or an inspection for the issue of an airworthiness certificate. 14 CFR, § 91.169. All defects affecting airworthiness are required to be repaired between inspections and "[e]ach owner or operator. . . shall ensure that maintenance personnel make

appropriate entries in the aircraft and maintenance records indicating the aircraft has been released to service." 14 CFR, § 91.165. No person may perform maintenance, preventive maintenance, or alteration on the aircraft other than those persons specified under the regulations. 14 CFR, § 91.163.

"Federal Air Regulations duly published in accordance with law in the Code of Federal Regulations have the force of law." Todd v. United States, 384 FSupp. 1284, 1294 (M. D. Fla. 1974). However, in order to support his negligence per se claim, appellant must prove that the maintenance regulation (which he argues includes the inspection requirement) was passed for his benefit and was the proximate cause of his injury. *Southern R. Co. v. Martin,* 125 Ga. App. 653 (188 SE2d 819) (1972). When considering 14 CFR, § 91.163, together with all of the other regulations pertaining to the maintenance of aircraft it appears that the purpose of the regulations is to ". . . promote air safety and protect the lives of pilots, passengers, and persons on the ground." French v. C. A. B., 378 F2d 468, 471 (1967). Thus, it is obvious that the Federal Aviation Regulations do not establish commercial warranties, but seek to protect the safety of the general public. Tanner, as a subsequent owner of the aircraft, is not within the class of people protected by this rule. As he did not prove that the regulation was passed for his benefit, there was no jury question as to whether or not Rebel failed to maintain the aircraft.

2. Appellant argues that he presented evidence of Rebel's negligence per se in failing to repair and keep proper records. This argument fails for the reason stated in Division 1.

3. Appellant contends that a jury question existed as to the status of the inspector who performed the July 13, 1973, annual inspection. In order for Rebel to be liable for the negligent acts of its alleged agent, there must be breach of a duty owed by the inspector to appellant. As held above, no such duty existed. Therefore. this argument is without merit.

4. As appellant has failed to show that he was within the class of persons protected under the Federal Aviation Regulations, it was not error for the trial court to exclude

from evidence the depositions of Vernon D. Haynes, an FAA inspector, and Charles Nichols, Jr., president of Aviation. Haynes' deposition only shows the damages he found after appellant suspected his plane was unairworthy and Nichols' deposition only shows circumstances surrounding his purchase of the airplane from Rebel and his sale of the aircraft to Tanner.

The trial court did not err in granting appellee's motion for a directed verdict, as the record fails to disclose any material issue for jury resolution. *Deroller v. Powell,* 144 Ga. App. 585 (241 SE2d 469) (1978).

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED APRIL 4, 1978 — DECIDED MAY 12, 1978 — REHEARING DENIED MAY 26, 1978 —

*Neely, Neely & Player, William F. Welch,* for appellant.

*Robert F. Bourk, Gary W. Gardenhire, Richard L. Swedberg,* for appellees.