**O.L. McLENDON, et al., Plaintiffs,**

v.

**GEORGIA KAOLIN CO.,
INC., Defendant.**

**Grant SMITH, Plaintiff,**

v.

**GEORGIA KAOLIN CO.,
INC., Defendant.**

**Civ. A. No. 85–338–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 14, 1994.

**416**

See also, 837 F.Supp. 1231.

James E. Carter, Madison, GA, for plaintiffs.

John Burke Harris, Jr., William Camp Harris, John Elvis James, Macon, GA, for defendant.

## ORDER

OWENS, Chief Judge.

Before the court is defendant's motion in limine to exclude the testimony of plaintiffs' expert, M. Eugene Hartley ("Hartley"), concerning the quantity, quality, commercial uses, and value of the kaolin deposit on the property in question ("Smith property"). Pursuant to Federal Rule of Evidence 104(a), the court issues the following order on the admissibility of Hartley's expert testimony.

### FACTS

Plaintiffs' claims involve similar facts but due to distinct legal issues will be tried in two separate trials. The suit developed after plaintiffs, heirs of Edward D. Smith, conveyed their interests in a tract of land in Wilkinson County, Georgia, to defendant, Georgia Kaolin Company, Inc., between 1969 and 1971. Plaintiffs claim that defendant fraudulently concealed the true value of the property while under a duty to disclose material information.[1] In addition, plaintiff Grant Smith has an equitable claim to set aside the judgment of the ordinary which approved the sale of his interest in the land. In both trials, counsel for plaintiffs seek to present the testimony of Hartley as a scientific expert on the value of the kaolin deposit. Defendant challenges Hartley's qualifications as an expert and questions the bases of Hartley's opinion.

The court held a lengthy hearing on December 7, 1993, where counsel for both parties were provided an opportunity to voir dire Mr. Hartley as to his qualifications and opinions. Hartley is expected to testify concerning damages; specifically, he will offer an opinion of the quantity of the kaolin deposit on the Smith property as well as its quality, commercial uses, and value in the late 1960's and early 1970's.

---

1. The 325 acres of land in central Georgia contain a large kaolin deposit.

## DISCUSSION

The court has broad discretion in determining the admissibility of expert testimony. *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Evans v. Mathis Funeral Homes, Inc.,* 996 F.2d 266, 268 (11th Cir.1993); *Polston v. Boomershine Pontiac–GMC Truck, Inc.,* 952 F.2d 1304, 1309 (11th Cir.1992). Defendant challenges Hartley's testimony on two grounds, (1) that Hartley is not qualified as an expert under Federal Rule of Evidence 702, and (2) that his opinion is based solely on the opinion of other experts rather than on facts normally relied upon by experts in the particular field.

### A. Hartley's Qualifications as an Expert

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Rule 702.

Rule 702 sets forth a two tier test for admissibility of expert testimony. First, the expert must show that he is qualified by "knowledge, skill, experience, training, or education." Second, the testimony must "assist the trier of fact to understand the evidence or determine a fact in issue." The expert opinion is not required to be generally accepted in the field, but must be relevant and meet a standard of "evidentiary reliability." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993).[2]

The expert testimony must be based on "scientific ... knowledge." *Id.* at ——, 113 S.Ct. at 2795. "The adjective 'scientific' im-plies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id.* The court should focus "solely on [the expert's] principles and methodology, not on the conclusions" generated. *Id.* at ——, 113 S.Ct. at 2797.

■ Mr. Hartley testified that he is an economic geologist and an expert in the field of industrial minerals, of which kaolin is a part. He received his Bachelors and Masters degrees from the University of Georgia where he took the standard survey courses in geology, but did not attend a course on clay mineralogy or otherwise study the mineral kaolin in any depth. (Transcript of December 7, 1993, hearing, pp. 14–15. *See also* affidavit of Dr. Hurst, May 6, 1993.) Hence, Hartley's training and education alone do not qualify him to testify as an expert on kaolin.

Still, Hartley contends that his knowledge, skill, and work experience, in combination with his schooling, qualify him to testify as an expert on kaolin. Mr. Hartley has minimal work experience with kaolin evaluation. Hartley testified that he assessed kaolin reserves for RTZ, a mining corporation. However, cross-examination disclosed that the RTZ project did not include an evaluation of core samples but, instead, involved a review of leases and maps. Hartley has some additional experience in valuing kaolin deposits for Dorfner, a mining company. Despite this slight experience with kaolin, Hartley lacks sufficient knowledge of kaolin, the processes used to make the mineral commercially usable, and its market value to testify as an expert.

Hartley admitted that the kaolin deposit on the Smith property is commercially unusable at its present color, and that it would have to be brightened in some manner before it would be commercially acceptable.[3]

---

2. In *Daubert,* the Supreme Court clarified the standard for admitting expert testimony. The Court held that the Federal Rules of Evidence provided the test for determining the admissibility of scientific expert testimony. Moreover, the rules occupy the field, thus superseding the "general acceptance" test set forth in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). *Daubert,* —— U.S. at ——, 113 S.Ct. at 2793. The "general acceptance" of the proffered scientific theory or technique can influence the court's analysis, but is not necessarily determinative. *Id.* —— U.S. ——, 113 S.Ct. at 2797.

3. Kaolin is used in coating paper and must be light in color to be used commercially. In addition to brightness, the factors of viscosity, parti-

(Hearing Transcript, p. 66.) Kaolin can be brightened through bleaching, whitening, or blending. However, the expert showed that he was rather unknowledgeable about these brightening processes. (*Id.* at 52–67.) The expert could not adequately explain the criteria used in evaluating kaolin. (*Id.* at 42–53.) Importantly, Hartley was not aware of when various kaolin cleaning processes, such as ozonation and certain bleaching agents, were developed and used commercially.[4] (*Id.* at 53–54.) Because the transaction occurred in the late 60's and early 70's, the expert must be knowledgeable as to the commercial practices and market value of kaolin at that time in order to assist the trier of fact. Absent knowledge of how and if the clay can feasibly be brightened to an acceptable level, one can not accurately estimate its quality and commercial uses.

At best, Hartley is capable of estimating the quantity of kaolin on the Smith property. Defendant's expert, Dr. Hurst, testified that Hartley's estimate of quantity included sand, dirt, and bauxite. While a difference of opinion between experts is expected and does not support the disqualification of an expert, serious questions concerning Hartley's ability to assess the commercial quality of kaolin also bring his estimate of quantity into question. Hartley has not demonstrated that he knows the outer limits of usable kaolin. Hence, the court is concerned that Hartley's estimate of quantity is inflated and includes elements which do not amount to commercially usable kaolin. Furthermore, an estimate of the amount of kaolin without an assessment of its quality or value would not assist the trier of fact in valuing the kaolin deposit.

Hartley's estimate of the 1969 value of the kaolin is flawed for several reasons. First, having found Hartley's estimate of quality unreliable, the valuation which is based upon the assessment of quality is equally suspect. Second, Hartley estimated the 1969 value of the kaolin at $4.2 million by using a royalty of three percent of the finished product. He testified that a royalty of three percent of the finished product is used to value other industrial minerals. However, he had no knowledge or evidence of royalties used in kaolin leases either current or in 1969. In addition, questions as to Hartley's estimate of quantity certainly would affect his valuation.

The second requirement of Rule 702 is that the expert opinion assist the trier of fact to determine a fact in issue (the value of kaolin). In his testimony, Hartley concluded that the deposit was valuable because defendant is holding the property, drilling on it, and defending the lawsuit. (*Id.* pp. 59–60.) The conclusion is that of a lay person and requires no expert reasoning or knowledge.

Plaintiffs and their expert contend that one does not need to be a kaolin specialist to accurately value a kaolin deposit. However, a certain degree of specialization is necessary. The court is less concerned about whether Hartley specializes in the kaolin area and more concerned with his knowledge of the subject matter. The court finds Hartley not sufficiently knowledgeable to accurately assess the quantity, quality or value of kaolin to be of assistance to the trier of fact.

■ The Court, in *Daubert,* recognized that courts have additional safeguards available should expert testimony be admissible under Rule 702. For example, cross-examination, presentation of contrary evidence, and jury charges on the burden of proof and causation should suffice to attack questionable but admissible expert testimony. However, these devices are only sufficient safeguards where the scientific testimony meets the standards of Rule 702. *See Daubert,* —— U.S. at ——, 113 S.Ct. at 2798. Hartley is not sufficiently qualified in the field of kaolin exploration and valuation to offer testimony concerning the quantity, quality, commercial uses, and value of the Smith property kaolin deposit in the late 60's and early 70's or in today's market. Therefore, the court finds

---

cle size, and grit content affect the quality, commercial uses, and value of kaolin.

4. In evaluating the Smith deposit, Hartley relies primarily on a memo dated March 20, 1969, from John Smith, to E.J. Grassmann. Smith writes that some of the samples would not re-

spond to normal brightening processes, but did brighten in the research lab using "sodium hypochlorite at three gallons per ton." *See* Plaintiffs' Exhibit JS–17, attached to defendant's motion in limine. Hartley stated that he was unaware whether sodium hypochlorite could be used commercially in 1969 or even now.

Hartley not qualified under Rule 702. Cross-examination would expose Hartley's lack of expertise, but at the risk of prejudicing and misleading the jury. Rule 403.

## B. The Basis of Expert Hartley's Testimony

■ Hartley's testimony must also be excluded because it is based upon unreliable hearsay, the opinions of others, rather than on data reasonably relied upon by experts in the particular field. Rule 703 provides that expert opinions based upon otherwise inadmissible hearsay are to be admitted only if the facts or data upon which the opinion is based are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Rule 703. *See also Daubert*, —— U.S. at ——, 113 S.Ct. at 2798. Rule 703 is an exception to the exclusion of hearsay evidence because of the expert's professional knowledge and training. *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir.1971). Nevertheless, a "court cannot unjustifiably defer to any expert's assertion that a particular proffered opinion has a basis in fact." *Smith v. Ortho Pharmaceutical Corp.*, 770 F.Supp. 1561, 1573 (N.D.Ga.1991). The court must make the ultimate determination of whether a reliable basis underlies the expert opinion. *Id.*

In Hartley's affidavit of December 3, 1993, he states that he has based some of his opinions, namely his opinion of the quality of the kaolin clay, on "admissions" by "a knowledgeable employee of defendant." (Hartley affidavit, December 3, 1993, para. 3. *See also* Hearing Transcript, p. 33.) When questioned at the hearing, Hartley testified that he was referring primarily to a March 20, 1969, memo from John M. Smith to Grassmann discussing the processes used to brighten the kaolin extracted from the Smith property. (Plaintiff's Exhibit, JS–17, attached to defendant's motion in limine.) In the memo, Smith explains that some of the samples would not respond to normal brightening processes, but did brighten in the research lab using "sodium hypochlorite at three gallons per ton." (*Id.*) Hartley stated

that he was unaware whether the use of sodium hypochlorite to brighten kaolin was commercially practicable in 1969 or even now. Despite this lack of knowledge, Hartley relies on Smith's opinion of the clay quality. Of concern is the fact that Hartley did not consider that some of the kaolin was brightened to acceptable levels in a research lab; he is unaware whether the use of sodium hypochlorite was experimental or not. (Hearing Transcript, pp. 57–58.) Yet, he assumes that because the kaolin was brightened in a research lab that the method is commercially feasible.

In addition, Hartley relied upon a memo from A.G. Bowman to a Georgia Kaolin executive, dated February 21, 1967, which states that Bowman has "no doubt in (his) mind that (the Smith) property contains a large tonage of clay similar to the clay on the adjacent Califf property...." (Hearing Transcript, p. 31.) At the time, Georgia Kaolin had an interest in the neighboring Califf property which also contained a kaolin deposit. Hartley relied upon Bowman's assessment without knowing Bowman's occupation, training, or background. (*Id.* p. 41.) Moreover, Hartley is unfamiliar with the data upon which Bowman derived his opinion of the kaolin's quality. (*Id.*)

The above two memoranda are not the type normally relied upon by scientific experts. Hartley's opinion that these documents constitute admissions as to quality on the part of defendant is a matter for the court to decide. Hartley's opinion on the quality of the Smith kaolin must be excluded because it is not based upon data of a type reasonably relied upon by experts in the field of kaolin evaluation.

## CONCLUSION

Plaintiffs' expert, M. Eugene Hartley, has not shown that he is qualified by "knowledge, skill, experience, training, or education" to offer an opinion as to the quantity, quality, commercial uses, or value of the Smith kaolin deposit. Furthermore, under Rule 703, Hartley's opinion on the quality of the Smith

kaolin must be excluded because it is not based upon data reasonably relied upon by experts in the field of kaolin evaluation. Accordingly, the court must exclude Hartley from testifying as to his opinion of the quantity, quality, commercial uses, or value of the Smith kaolin deposit. Defendant's motion in limine is **GRANTED.**

**SO ORDERED.**