Pauline E. WHEAT and
Wilmon Wheat

v.

SOFAMOR, S.N.C., et al.

John S. Phillips, Jr., and
Janet S. Phillips

v.

Sofamor, S.N.C., et al.

Michael Knight and Debra Knight

v.

Sofamor, S.N.C., et al.

Deborah Sanders and David Sanders

v.

Sofamor, S.N.C., et al.

Nos. Civ.A.1:96–CV3163RWS, Civ.A.1:96–CV3164RWS, Civ.A.1:96–CV3166RWS and Civ.A.1:96–CV3169RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 28, 1999.

F. Glenn Moffett, Jr., Moffett Law Firm, Atlanta, GA, for plaintiffs.

Lori Gail Baer, Clifton Miller Iler, Elizabeth Bertschi, Alston & Bird, Atlanta, GA, Anthony C.H. Vale, Pro Hac Vice, Stephen S. Phillips, Pro Hac Vice, Pepper Hamilton, Philadelphia, PA, for defendants Sofamor, S.N.C. and Sofamor–Danek Group.

Ben Kingree, III, Carter & Ansley, Atlanta, GA, Carl A. Henlein, Pro Hac Vice, Douglas W. Langdon, Pro Hac Vice, Susan Wettle, Pro Hac Vice, Ann E. Eberle, Pro Hac Vice, Steven M. Crawford, Pro Hac Vice, Brown Todd & Heyburn, Louisville, KY, for defendants Stuart Medical, Inc. and Youngwood Medical Specialties, Inc.

## MEMORANDUM OPINION AND ORDER

STORY, District Judge.

The above cases are all product liability actions for the recovery of injuries allegedly resulting from defective bone screw devices. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

In Civil Action No. 1:96–CV–3163–RWS, the following motions are pending: Sofamor Defendants' Motion for Summary Judgment [18–1], Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [19–1], Sofamor Defendants' Motion to Exceed Page Limitation [21–1], Sofamor Defendants' Motion to Exclude the Testimony of Antonio Aldrete [21–2], and Sofamor Defendants' Motion for Oral Argument on Motion to Exclude [22–1]. As a preliminary matter, Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [19–1], Sofamor Defendants' Motion for Oral Argument on Motion to Exclude Testimony [22–1], and Sofamor Defendants' Motion to Exceed Page Limitation [21–1] are **GRANTED.**

In Civil Action No. 1:96–CV–3164–RWS, the following motions are pending: Sofamor Defendants' Motion for Summary Judgment [20–1], Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [21–1], Sofamor Defendants' Motion to Exceed Page Limitation [23–1], Defendants' Motion to Exclude the Testimony of Antonio Aldrete [23–2], and Sofamor Defendants' Motion for Oral Argument on Motion to Exclude Testimony [24–1]. As a preliminary matter, Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [21–1], Sofamor Defendants' Motion for Oral Argument on Motion to Exclude Testimony [24–1], and Sofamor Defendants'

Motion to Exceed Page Limitation [23–1] are **GRANTED.**

In Civil Action No. 1:96–CV–3166–RWS, the following motions are pending: Defendants Youngwood Medical and Stuart Medical's Motion for Summary Judgment [23–1], Sofamor Defendants' Motion for Summary Judgment [24–1], Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [25–1], Sofamor Defendants' Motion to Exceed Page Limitation [27–1], Sofamor Defendants' Motion to Exclude the Testimony of Antonio Aldrete [27–2], and Sofamor Defendants' Motion for Oral Argument on Motion to Exclude Testimony [28–1]. As a preliminary matter, Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [25–1], Sofamor Defendants' Motion to Exceed Page Limitation [27–1], and Sofamor Defendants' Motion for Oral Argument on Motion to Exclude Testimony [28–1] are **GRANTED.**

In Civil Action No. 1:96–CV–3169–RWS, the following motions are pending: Defendants Youngwood Medical and Stuart Medical's Motion for Summary Judgment [23–1] and Sofamor Defendants' Motion for Summary Judgment [24–1], Sofamor' Defendants Motion for Oral Argument on Motion for Summary Judgment [25–1], Sofamor Defendants' Motion to Exceed Page Limitation for Motion to Exclude [28–1], Defendants Sofamor's Motion to Exclude the Testimony of Antonio Aldrete [28–2], and Sofamor Defendants' Motion for Oral Argument on Motion to Exclude [29–1]. As a preliminary matter, Sofamor Defendants' Motion for Oral Argument on Motion for Summary Judgment [25–1], Sofamor Defendants' Motion to Exceed Page Limitation for Motion to Exclude [28–1], and Sofamor' Defendants' Motion for Oral

Argument on Motion to Exclude [29–1] are **GRANTED.**

After conducting a hearing on February 2, 1999 and reviewing the entire record, the Court enters the following Order.

## I. FACTUAL BACKGROUND

The factual background of each of the above-identified cases is sufficiently set out in the record of the respective cases. Generally, each plaintiff sustained some kind of back injury and eventually underwent back surgery which included instrumentation manufactured by the Sofamor Defendants. Each Plaintiff's spouse has a loss of consortium claim. The cases identified above all involve the expert testimony of Dr. Antonio Aldrete. However, the *Phillips* and *Wheat* cases involve the Texas Scottish Rite Hospital Spinal System ["TSRH"], while the *Knight* and *Sanders* cases involve the Cotrel–Dubousset ["CD"] system. The *Sanders* and *Knight* cases also include the distributor of the CD system, Stuart Medical, Inc. and Youngwood Medical Specialties, Inc. The Complaints contain claims for strict liability based on a design defect, a manufacturing defect, and the failure to warn; negligence based on the aforementioned allegations and the failure to seek FDA approval; and fraud based on the alleged misbranding, improperly labeling, and promotion of an off-label use of an FDA approved device.

## II. LEGAL ANALYSIS

A. Defendants' Motion to Exclude Testimony of Aldrete [1]

1. Qualifications

Plaintiffs identified J. Antonio Aldrete as their sole case-specific expert on causa-

1. Defendants contend granting this motion would demand grant of Defendants' summary judgment motions. See *Lust By and Through Lust v. Merrell Dow Pharmaceuticals*, 89 F.3d 594, 598 (9th Cir.1996) (defendant satisfied burden at summary judgment by showing that testimony of causation expert was inadmissi-

ble); *Todd by Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1179 (7th Cir. 1991) (proper grant of summary judgment where no causation expert and no scientific evidence); *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 276 (3rd Cir.1991) (exclusion of enough of plaintiff's expert's testimony on causa-

tion and liability. Defendants seek to exclude Aldrete's testimony based on Aldrete's qualifications and methodology.

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training or education,* may testify thereto in the form of an opinion or otherwise. (emphasis added)

Fed.R.Evid. 702. "The competency of an expert witness is a matter addressed largely to the discretion of the trial judge and the district court's qualification of an expert will be sustained unless clearly and manifestly erroneous." *Berdeaux v. Gamble Alden Life Ins. Co.,* 528 F.2d 987, 990 (5th Cir.1976)[2] (citations omitted).

 The Court has serious concerns regarding Aldrete's qualifications. Aldrete is an anesthesiologist; he is board certified in anesthesiology and pain management. Aldrete is not an orthopedist and has never practiced in the area of orthopedics. Aldrete has treated approximately 45 patients who have instrumentation and he has participated, as an anesthesiologist, in approximately 1,000 instrumented spinal fusion[3] surgeries.[4] However, his experience is in the area of pain management rather than the structure and purpose of implant devices and fixation systems. Aldrete has not conducted any studies or collected any data which would lead him to an independent assessment of the effect of instrumentation on the development of fusion in spinal fusion surgery. *See Everett v. Georgia–Pacific Corp.,* 949 F.Supp. 856, 857 (S.D.Ga.1996) (where witness sought to testify on cause of plaintiff's medical condition, witness was not qualified as expert because witness practiced in the area of family medicine and surgery and possessed no specialized knowledge or training in the field of toxicology; expert must, at a minimum possess some specialized knowledge about field in which he is to testify); *McLendon v. Georgia Kaolin Co.,* 841 F.Supp. 415 (M.D.Ga.1994) (economic geologist not qualified to testify about quantity, quality, or value of kaolin where geologist had minimal work experience with kaolin evaluation, lacked knowledge of treating kaolin, did not know outer limits of uses of kaolin and had no knowledge of royalties used in kaolin leases); *but see Smith v. Ortho Pharmaceutical, Corp.,* 770 F.Supp. 1561 (N.D.Ga.1991) (trial court found physician qualified to give expert testimony although his area of expertise was a different subject area).

Plaintiffs cite *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038 (2nd Cir.1995) for the proposition that an expert witness is not required to be a specialist in the specific subject area of which the testimony is offered. In *McCullock,* the plaintiff claimed her exposure to and inhalation of fumes from the defendant's hot-melt glue caused throat polyps, hoarseness, irritation and thickening of her vocal cords. In that

---

causation, permitted trial court to grant defendant's motion for summary judgment); *White v. Chicago Pneumatic Tool Co.,* 994 F.Supp. 1478, 1481 (S.D.Ga.1998) (where expert testimony admissible, question of fact on issue of proximate cause and summary judgment precluded); *Haggerty v. Upjohn, Co.,* 950 F.Supp. 1160 (S.D.Fla.1996), *aff'd* 158 F.3d 588 (11th Cir.1998) (where only expert witness testimony on medical causation excluded, defendant entitled to summary judgment). The Court will determine if Aldrete's testimony is admissible and whether the admissibility of Aldrete's testimony affects the outcome of Defendants' motions for summary judgment.

**2.** *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981).

**3.** Fusion is a biological process in which bone grows between the vertebrae to be fused.

**4.** Aldrete admits that he only sees the complications. He does not see the patient before surgery or soon thereafter. Aldrete does not believe that internal fixation with screws properly implanted could increase the risk of nonunion over a noninstrumented surgery.

case, an ear, nose, and throat doctor was qualified to testify on the plaintiff's throat ailment and its causes.[5] However, in the case at bar, Aldrete does not specialize in back ailments, their causes, or orthopedics. Aldrete's specialty relates only to addressing the symptom of pain. It is not clear that Aldrete has knowledge in the area of the causes of back pain to the extent that it results from defective bone screws.

Aldrete's accolades and scholarly works relate to anesthesiology rather than orthopedics or biomechanical engineering. Furthermore, Aldrete has not written or published an article on the use of spinal instrumentation. Consequently, the Court has serious concerns regarding Aldrete's qualifications. In light of the Court's concerns, the Court finds there is an issue of fact, and Defendants' motion is denied to the extent that it is based on Aldrete's qualifications.

2. Relevance and Reliability

■ Federal Rule of Evidence 702, as explained by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2794–95, 125 L.Ed.2d 469 (1993), and its progeny, controls determinations regarding the admissibility of expert testimony. Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir.1998), *reh'g and reh'g en banc denied*, 172 F.3d

884, 1999 WL 80229 (1999). Plaintiffs contend *Daubert* does not apply to Aldrete's testimony. However, according to *Kumho Tire Co., Ltd., et al., v. Carmichael*, —— U.S. ——, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), *Daubert* applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. Essentially, *Daubert* applies to all expert testimony. *Id.* Therefore, *Daubert* applies to Aldrete's testimony.

■ The proponent of expert testimony must show admissibility by a preponderance of the evidence. *Daubert*, at 509 U.S. at 592, n. 10, 113 S.Ct. at 2796. Defendants challenge the methodology used by Aldrete. Defendants contend Aldrete's methodology is unreliable, and therefore, his testimony is inadmissible under *Daubert*. *Daubert* requires a district court to evaluate the overall relevance and reliability of scientific evidence in order to determine admissibility. Rule 702 encompasses the relevance component of the *Daubert* test.

■ The Court questions the admissibility of Aldrete's testimony under Rule 702 for several reasons. Generally, medical causation must be proved to a reasonable certainty. *Satterfield v. J.M Huber Corp.*, 888 F.Supp. 1567 (N.D.Ga.1995). Causation may be proved with two types of evidence: evidence of general causation and evidence of specific causation. *Bowers v. Northern Telecom, Inc.*, 905 F.Supp. 1004 (N.D.Fla.1995). General causation is the capacity of a product to cause injury; specific causation is proof that the product in question caused the injury of which the plaintiff complains. *Id.* With respect to all four plaintiffs, Aldrete could not state to a reasonable degree of medical certainty that the screws used in each plaintiff's surgery caused his/her back condition and resulting pain. On the contrary, Aldrete explained that the *implantation* of the

---

**5.** The court in *McCullock* held disputes as to the strength of the expert's credentials, faults in his use of a differential methodology or the lack of textual authority for his opinion, go to the weight of his testimony not its admissibility. *McCullock*, 61 F.3d at 1044.

screws might be the cause of pain rather than the screws themselves.[6] Aldrete explained further that spinal instrumentation is effective in alleviating pain for patients with certain types of conditions such as trauma, metastasis, tumors and spinal fractures; however, to the extent that instrumented surgery is chosen as a course of treatment to relieve pain, Aldrete testified that such surgery may be an objective failure although fusion may occur and the structure of the pedicles is fine. At the same time, Aldrete admits that the mere fact that a patient might get worse after an instrumented lumbar fusion surgery does not necessarily mean the hardware is to blame.

Because Aldrete cannot state to a reasonable degree of medical certainty that pedicle screws cause various back ailments and cannot state to a reasonable degree of medical certainty that the pedicle screws used in the present actions are the cause of the plaintiff's pain, Aldrete's testimony is unhelpful and irrelevant.

■ Defendants also challenge the reliability of Aldrete's expert opinion. In determining whether expert opinion testimony is reliable, the Court should consider whether the theory or technique can and has been tested, whether it has been sub-

ject to peer review and publication, the known or potential rate of error of the technique, whether there are standard procedures and whether the theory or technique is generally accepted in the scientific community. *Daubert,* 509 U.S. at 593–594, 113 S.Ct. at 2796–97. However, where the expert has not done original research to support his theory, testability and error rate should not be considered. *Lust By and Through Lust v. Merrell Dow Pharmaceuticals,* 89 F.3d 594, 597 (9th Cir.1996). Generally, the trial judge should find an expert's opinion testimony sufficiently reliable even though the expert's technique may have flaws. *In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717 (3rd Cir.1994). However, misapplication of a methodology may be enough to render the underlying methodology unreliable. *Id.*

Defendants argue Aldrete's conclusions are based solely on the temporal connection between implantation and experiencing pain, and the temporal connection between the two events is insufficient to prove causation. *See Cartwright v. Home Depot,* 936 F.Supp. 900 (M.D.Fla.1996) (where expert failed to identify methodology employed leaving only temporal relationship as basis for opinion, testimony excluded). However, Plaintiffs contend

---

6. When questioned about the cause of Phillips's arachnoiditis, Aldrete responded, "Maybe the implantation of the screws and the act of implanting the screws." *Phillips,* Deposition of Antonio Aldrete, p. 74. Aldrete's report for Phillips states, in part, "The chronological analysis of the events before and after the fusion operation lead me to believe that the implantation of the screws and plates was the primary cause of persistent pain, [and] neurological damage[.]" Plaintiff's Exhibit No. 11, Aldrete's Report. With respect to Plaintiff Wheat, Aldrete stated in his report, "It is my medical opinion that the weakness and atrophy of the right leg muscle, the partially right drop foot and decreased sensation in the right leg and foot were primarily caused by the hardware implanted on the lumbosacral spine." Plaintiff's Exhibit B, p. 2. With Plaintiff Knight, Aldrete concluded that bone fragments in the vertebral canal, lack of fusion and loose facet joints were the source of pain which resulted from the pen-

etration of the screws. However, Aldrete could only speculate as to the cause of these abnormalities and could not state to a reasonable degree of medical certainty that the cause was attributable to some inherent problem with the screws, the size of the selected screw or the placement of the screws. In *Sanders,* Aldrete made the following conclusions:

> It is my medical opinion, ... the pedicular screws and plates produced not only pain but also neurological damage as noted several times by Dr. Osborn and confirmed by the neurological deficits noted a number of times during subsequent visits ... From the unquestionable and repeated normal neurological exams before the implantation of the metal fusion device, it derives that this particular surgical modality was the primary cause of this patient's persistent chronic and disabling back pain and frequent headaches that besieged her from then on.

Plaintiff's Exhibit B, p. 4.

Aldrete used the differential diagnosis[7] method to reach his conclusions. Although Aldrete testified that it is important for any diagnosis of pain to have a radiological component, Aldrete failed to perform or obtain the results of some basic radiological and neurological examinations. Moreover, Aldrete failed to conclude that pedicle screws were the sole cause of back pain.

Although Aldrete reviewed the plaintiffs' medical records and conducted examinations, Aldrete did not conduct any research studies in this area. Plaintiffs failed to show that Aldrete's theory has been subjected to peer review and failed to show that his theory is generally accepted in the scientific community. Furthermore, Aldrete admitted that he has never admonished a surgeon against the use of pedicle screws. Consequently, Aldrete's theory and conclusions are unreliable and inadmissible.

In the case at bar, there is no body of literature which addresses the relationship between the mere implantation of pedicle screws and back pain. Although the methodology of differential diagnosis is generally accepted in the scientific community, Aldrete failed to follow the standard procedures required to perform this technique. See, Paoli, 35 F.3d. at 760 (Third Circuit held district court abused its discretion in excluding expert opinion testimony unless doctor "engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes and the doctor offered no good explanation as to why his or her conclusion remained reliable," or "the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness.").

The case at bar should be compared to Lust. In that case, the plaintiff's expert witness concluded that the fertility drug Clomid caused a birth defect identified as hemifacial microsomia. This conclusion was based on several findings: (1) human epidemiological studies reported a positive associant between the ingestion of Clomid and a wide variety of birth defects, (2) animal studies indicated that Clomid was teratogenic in four species, (3) and studies indicated that Clomid has a mutagenic effect on humans. Specifically, the plaintiff's expert concluded that because Clomid is known to be capable of causing all kinds of birth defects, depending on the timing of exposure, Clomid causes hemifacial microsomia. The district court rejected the plaintiff's expert testimony as unreliable, and the Court of Appeals affirmed.

The expert in Lust failed to explain how he reached his conclusions and failed to identify an objective source which indicated that his method and premise were generally accepted by or espoused by a recognized minority of teratologists. Although the plaintiff argued the trial court erred in focusing on the conclusions reached rather than the methodology used, the Ninth Circuit concluded that "[w]hen a scientist claims to rely on a method practiced by most scientists, yet presents conclusions that are shared by no other scientist, the district court should be wary that the method has not been faithfully applied." Lust, 89 F.3d at 598.

Similarly, although the differential diagnosis method may be generally accepted and practiced, Plaintiffs failed to show that any other expert has reached the conclusion that the mere implantation of pedicle screws causes back injuries and pain. For these reasons, the Court finds Aldrete's testimony unreliable and inadmissible.

### B. Sofamor Defendants' Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant

---

7. "The determination of which one of two or more diseases or conditions a patient is suffering from, by systematically comparing and contrasting their clinical findings." *Dorland's Illustrated Medical Dictionary* 458 (28th ed.1994).

**1360**

summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." The applicable substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11.

When the nonmovant has the burden of proof at trial, the movant may carry its burden at summary judgment by demonstrating the absence of an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. If the movant meets this burden, the nonmovant then has the burden of showing that summary judgment is not appropriate by setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

**1. Evidence of a defect**

 Plaintiffs alleged Defendants' pedicle screws were defective in that they were improperly manufactured and defectively designed. O.C.G.A. § 51–1–11 provides for strict liability against a manufacturer for personal injuries resulting from an unmerchantable product which was not reasonably suited to its intended use. O.C.G.A. § 51–1–11(b). A manufacturer can be held strictly liable for manufacturing defects, marketing/packaging defects and inadvertent design defects only if the plaintiff shows the product sold was "defective."[8] *Center Chem. Co. v. Parzini,* 234 Ga. 868, 869, 218 S.E.2d 580, 582 (1975) (where court did not define terms of statute or meaning of "defective," but stated that a product is not in a defective condition when it is safe for normal handling and consumption).

 With Aldrete's testimony excluded, the issue is whether there remains sufficient evidence of a defect for Plaintiffs to survive Defendants' motions for summary judgment. Plaintiffs point to the testimony of Dr. Harold Alexander. Alexander's area of expertise is orthopedics, and the Court considers Alexander a qualified expert. Alexander noted that complication rates of pedicle screw devices have been reported to be as high as 63%. Alexander opined that pedicle screw devices are not safe and effective, pose a substantial risk to treated patients, and are unreasonably dangerous.[9] Plaintiffs repeatedly alleged that the TSRH system and CD systems are "unreasonably dangerous." However, under Georgia law there is no liability for an "unreasonably dangerous" product absent some defect or defective condition. *See Parzini,* 234 Ga. at 870, 218 S.E.2d at 582. (court held it would not read into former Code Ann. § 105–106 "the condition that the defective product must be 'unreasonably dangerous'" although this term is included in the classic definition of strict liability). Also contained in the record is a letter composed by Norman T.

---

**8.** With respect to claims for manufacturing defects, marketing defects and inadvertent design defects, there is no difference between liability based on strict product liability and liability based on negligence. *Greenway v. Peabody Int'l Corp.,* 163 Ga.App. 698, 294 S.E.2d 541 (1982).

**9.** Plaintiffs misquote Dr. Alexander. The correct statement is as follows: "[M]y opinion is that pedicle screw based spinal fixation devices are not proved safe and effective and pose a substantial risk to treated patients. Until these devices are adequately tested for pedicular fixation, it must be assumed that they are unreasonably dangerous and should not be in general use outside of controlled, clinical trials."

Welford, a clinical engineer for a medical devices consulting firm. Welford's letter only addresses FDA clearance procedures. Similarly, Welford's letter does not identify a defect.. [10] With Aldrete's testimony excluded, there is insufficient evidence of a defect for Plaintiffs to survive Defendants' summary judgment motions. With no evidence of a particular design or manufacturing characteristic that would render pedicle screws, generally, or the TSRH system or the CD system defective, Defendants are entitled to summary judgment.

### 2. Risk–Utility Analysis

■ Plaintiffs' references to the record do not point to evidence of the existence of a manufacturing or design defect, but merely identify issues regarding FDA approval and the effectiveness of pedicle screws generally. However, any failure to seek FDA approval does not constitute a defect under Georgia law. Even if the Court considered the failure to seek and obtain FDA approval the equivalent of a "defective" product, Plaintiffs still cannot recover.

■ "The question of a negligent or defective design need not always be decided by a jury. The burden is on the plaintiff to present evidence that the manufacturer acted negligently by showing the risks inherent in the product's design outweigh the utility or benefit from the product." *Ogletree v. Navistar Int'l Transp.*

*Corp.*, 236 Ga.App. 89, 511 S.E.2d 204 (1999); *see also, Banks v. ICI Americas, Inc.*, 264 Ga. 732, 736, 450 S.E.2d 671, 675 (1994). Where the defendant can show that by applying the risk-utility test the lack of a defect is plain and indisputable, summary judgment is appropriate. *Raymond v. Amada, Co.*, 925 F.Supp. 1572 (N.D.Ga.1996). Under *Banks*, the jury balances various factors to determine whether the risks associated with the product are outweighed by the product's utility. *See Zeigler v. CloWhite Co.*, 234 Ga.App. 627, 507 S.E.2d 182 (1998). In applying the risk-utility test, the trier of fact considers the availability of an alternative safer design, cost trade-offs, tactical market decisions, product development, research/testing demands (technological feasibility), varying corporate management styles, and regulatory restrictions. *Banks*, 264 Ga. at 736, 450 S.E.2d at 674. The outcome of the risk-utility test determines whether liability should be imposed even if a defect exists.

Defendants point out that through application of the risk-utility test, the lack of a defect is plain and indisputable.[11] Defendants contend there is an absence of admissible evidence of the existence of an alternative safer design. Additionally, there is a total lack of evidence of the cost trade-offs related to any such alternative design, whether product development rele-

10. Plaintiffs' other evidence from generic experts is similarly flawed.

11. Defendants urge this Court to apply the Restatement (Third) of Torts, Section 6(c) to determine whether a medical device is reasonably safe due to a defective design. Using the Restatement (Third) rule, a defendant cannot be held liable if a reasonable healthcare provider, knowing the foreseeable risks and therapeutic benefits of a device, would not prescribe the device for any class of patients. Although the Restatement (Third) rule appears to be sound, the Court is hesitant to apply the rule in the cases at bar in the absence of any Georgia precedent on the specific section referred to by Defendants. Although the *Banks* court relied heavily on the preliminary draft of the Restatement (Third),

the Court never addressed Section 6 which applies to medical devices. The *Banks* court discussed only Section 101 and adopted the risk-utility test, generally, for design defect cases. Assuming Section 6 should apply to the case at bar, each of the plaintiffs' treating physicians testified that he was of aware of the foreseeable risks and therapeutic benefits of the devices used and, using hindsight, would prescribe the device again. Plaintiffs failed to proffer any evidence that a reasonable healthcare provider, knowing the foreseeable risks and therapeutic benefits of each device, would not prescribe the device for any class of patients. Moreover, Aldrete identified particular cases where pedicle screw implantation would be useful.

vant to the time period in question made an alternative design technologically feasible, or the effect of varying corporate management styles on the selection of a design. *Banks* 264 Ga. at 736, n. 6, 450 S.E.2d at 675. While there may be evidence which might suggest that pedicle screws did not meet regulatory standards, Defendants proffered evidence that the FDA does not regulate a doctor's use of an unapproved device and that the screws at issue here were cleared for sale by the FDA.

The record contains evidence of the risks surrounding pedicle screw implantation surgery. However, there is no probative evidence that pedicle screws can result in serious injuries or that there is a way to avoid any possible injury from pedicle screws. *See Banks*, 264 Ga. at 736, n. 6, 450 S.E.2d at 675. The record contains evidence of complication rates from pedicle screw implantation which is the equivalent of evidence of the likelihood of injury from implant surgery and evidence of the expectation of injury from pedicle screw implantation. Also, implicit in the record is evidence of the publicity surrounding the alleged danger of pedicle screws. In contrast, Defendants proffered evidence of the usefulness of pedicle screws, and the utility of the screws at issue here have even been touted by Plaintiffs' expert.

In sum, although through the application of the risk utility test there may be an issue of fact on the existence of a defect, there is no reliable evidence of a defect and no reliable evidence that any alleged defect caused an injury. Consequently, Plaintiff's strict liability claims must fail.

### 3. Negligence and negligence per se claims

To recover on a negligence claim, the plaintiff must prove the existence of a duty, breach, causation and injury. Plaintiffs contend and the evidence shows Defendants received premarket approval for use of the screws as sacral screws rather than pedicle screws and Defendants were warned against the promotion and use of the TSRH system for pedicle screws. This evidence may create a genuine issue of fact as to the existence of Defendants' duty to Plaintiffs and breach of that duty.[12] However, Plaintiffs failed to establish a genuine issue of fact on causation. Whether Plaintiffs' claims are based on the failure to seek FDA approval, defective design, defective manufacture or negligent failure to warn, Plaintiffs cannot prove than any allegedly negligent act caused an injury. Therefore, Defendants are entitled to summary judgment because of the absence of evidence creating a genuine issue of fact on causation.

### 4. Failure to Warn

To establish a claim for failure to warn, the plaintiff must show the defendant had a duty to warn, the defendant breached that duty and the breach was the proximate cause of the plaintiff's injury.

---

**12.** With a negligence per se claim, the Court must determine whether the injured person falls within the class of persons the statute or regulation was intended to protect, and whether the harm complained of was the harm it was intended to guard against. *Tanner v. Rebel Aviation, Inc.*, 146 Ga.App. 110, 245 S.E.2d 463 (1978); *Rhodes v. Baker*, 116 Ga.App. 157, 160, 156 S.E.2d 545, 548 (1967). The statutes and regulations at issue here are found at 21 U.S.C. § 360 and various subparts of 21 C.F.R. § 807. Under 21 C.F.R. § 807.81, each person who is required to register his establishment for device listing purposes must submit a premarket notification submission to the Food and Drug Administration at least 90 days before he proposes to begin the introduction or delivery into commerce a device intended for human use. According to *United States v. One Unlabeled Unit*, 885 F.Supp. 1025 (N.D.Ohio 1995), a device is "adulterated" and may not be legally marketed if it does not have an approved application for premarket approval by the FDA. A prohibited act under the FDA includes the introduction and delivery for introduction any adulterated device. 21 U.S.C. § 331(a). The FDCA and accompanying regulations are public safety regulations designed to protect consumers and patients such as the plaintiffs and the alleged harm from which they suffer.

*Powell Duffryn Terminals, Inc. v. Calgon Carbon Corp.*, 4 F.Supp.2d 1198 (S.D.Ga. 1998), *aff'd*, 176 F.3d 494 (11th Cir.1999). The duty to warn an end user of a risk associated with product use arises when the manufacturer knows or reasonably should know of a danger arising from product use. *Chrysler Corp. v. Batten*, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994). In determining whether such a duty exists, the court should consider the foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. *Zeigler*, 234 Ga.App. at 629, 507 S.E.2d 182. However, if the plaintiff fails to establish the existence of a duty to warn, the defendant is not subject to liability.

Defendants argue they had no duty to warn of the risks associated with pedicle screws and the court should grant summary judgment. Alternatively, Defendants contend that assuming there was a duty to warn, the learned intermediary doctrine applies to bar Plaintiffs' failure to warn claims. The learned intermediary doctrine modifies the general rule that imposes liability against a manufacturer for the failure to warn the end user of a known risk or hazard. Under the learned intermediary doctrine, a manufacturer is not required to directly warn the end user of dangers associated with a product's use; in the case of a prescription drug or device,[13] "a warning [ ] to the prescribing physician is sufficient." *Presto v. Sandoz Pharmaceuticals Corp.*, 226 Ga.App. 547, 548, 487 S.E.2d 70, 73 (1997). As a threshold issue, the Court should determine whether an adequate warning was given to Plaintiffs' physician. *Carter v. E.I. Du-Pont de Nemours & Co., Inc.*, 217 Ga.App. 139, 140, 456 S.E.2d 661, 662 (1995).

Plaintiffs argue physicians were not warned that the TSRH and CD systems had not received FDA approval for spinal fixation, were not warned of the reasons the FDA withheld approval and were not warned that the only "legal" use for the TSRH and CD systems was as part of an investigational device exemption ["IDE"].[14] This is not evidence of the failure to warn of risks associated with the product.

Regardless of the sufficiency or insufficiency of the warnings at issue here, Plaintiff still cannot recover. Where a learned intermediary has actual knowledge of the substance of the alleged warning and would have taken the same course of action even with the information the plaintiff contends should have been provided, courts typically conclude that the learned intermediary doctrine applies or that the causal link is broken and the plaintiff cannot recover. *Compare Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563 (11th Cir.1989) (under Georgia law, in applying learned intermediary doctrine, issue is whether learned intermediary had sufficient knowledge to protect consumer) *and Freeman v. United Cities Propane Gas of Ga.*, 807 F.Supp. 1533 (M.D.Ga.1992), *reh'g en banc denied*, 65 F.3d 185 (11th Cir. 1995) (same) *with Christopher v. Cutter Labs.*, 53 F.3d 1184 (11th Cir.1995) (under Florida law, no proximate cause where learned intermediary has independent knowledge that warning should have communicated). *See also, Thomas v. Hoffman–LaRoche*, 949 F.2d 806 (5th Cir. 1992), *reh'g denied*, 957 F.2d 869 (5th Cir. 1992), *cert. denied*, 504 U.S. 956, 112 S.Ct. 2304, 119 L.Ed.2d 226 (1992) (under Mississippi law, where issue of fact as to adequacy of warning, trial court's grant of judgment notwithstanding the verdict affirmed where plaintiff failed to show that

---

**13.** *See Lance v. American Edwards Labs.*, 215 Ga.App. 713, 452 S.E.2d 185 (1994) (learned intermediary doctrine applied where plaintiff sought to hold manufacturer liable for failure to warn of risks of gastric bubble implant).

**14.** 21 U.S.C. § 360j(g) permits the FDA to grant an exemption permitting experimental devices to be used without premarket approval but with conditions and under the supervision of the FDA.

warning would have prevented injury); *In re Norplant Contraceptive Products Liability Litigation,* 955 F.Supp. 700 (E.D.Tex.1997), *aff'd,* 165 F.3d 374 (5th Cir.1999), *reh'g denied* (where physician was aware of dangers associated with drug and information that would have been provided in warning would not have changed physician's decision to prescribe drug, court held no causation); *Woulfe v. Eli Lilly & Co.,* 965 F.Supp. 1478 (E.D.Okla. 1997) (same); *Zachary v. Dow Corning,* 884 F.Supp. 1061 (M.D.La.1995) (learned intermediary doctrine requires warning of inherent dangers not within knowledge of or obvious to average learned intermediary). Each of the plaintiffs' treating physicians testified that he was aware of the risks associated with spinal implant surgery, that such risks were well known in the medical community, and that he would have taken the same course of action in spite of the information Plaintiffs contend should have been provided.[15] Consequently, summary judgment is demanded.

### 5. Fraud

 Plaintiffs contend the court should determine whether Defendants are liable for actual and constructive fraud. With respect to actual fraud, the plaintiff must show (1) a misrepresentation of material fact, (2) scienter, (3) justifiable reliance, (4) intent to induce reliance, and (5) damages.

*Crawford v. Williams,* 258 Ga. 806, 375 S.E.2d 223 (1989). Plaintiffs failed to identify a material, false statement of fact made by Defendants to any plaintiff;[16] therefore, Plaintiffs cannot recover for actual fraud. Plaintiffs argue Defendants should be liable for constructive fraud for the failure to disclose hidden defects in their product and the failure to disclose inherent dangers in the product. However, there is no evidence of the existence of any hidden defect or inherent dangers. Therefore, Plaintiffs' fraud claims must fail.

### 6. Fraud on the FDA [17]

 Plaintiffs argue there is a genuine issue of fact of whether Defendants' alleged fraud on the FDA led to the creation of a black market for unproved and inadequately tested pedicle screw devices and whether a bone screw device would have been used if not for the creation of such a market. A "fraud on the FDA" claim differs from a common law fraud claim in that the fraud on the FDA claim authorizes liability based on a representation made to a third person rather than a representation to the injured party and reliance by the third party rather than the injured party. *See Michael v. Shiley,* 46 F.3d 1316, 1335 (3rd Cir.1995), *cert. denied,* 516 U.S. 815, 116 S.Ct. 67, 133

---

**15.** Aldrete testified that he had not reviewed the package insert or label that accompanied the TSRH system, the Cotrel–Dubousset system, the Danek Dyna-lok spinal instrumentation system, or the Danek Plate and Screw spinal instrumentation system.

**16.** Even assuming the pedicle screws were misbranded, improperly labeled, and promoted as an off-label use of an FDA-approved device, none of the representations implied in these activities were made to Plaintiffs.

**17.** Initially, in Pretrial Order No. 12, *In re: Orthopedic Bone Screw Products Liability Litigation,* MDL Docket No. 1014, the MDL court granted the defendants' motion for partial judgment on the pleadings with respect to the plaintiffs' fraud on the FDA claims. After the Supreme Court's decision in *Medtronic, Inc.*

*v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), the MDL court re-examined its ruling on the plaintiffs' fraud on the FDA claims and concluded that the plaintiffs still could not pursue such an action. However, in Pretrial Order No. 1067, the court certified the dismissal of the fraud on the FDA claims for appellate review and the Third Circuit held the transferee court erred in ruling that all of the plaintiffs' claims were barred. The Third Circuit concluded the transferor courts must determine whether under the relevant law the plaintiffs may maintain such a claim. *See In re Orthopedic Bone Screw Products Liability,* 159 F.3d 817 (3rd Cir.1998). Consequently, the MDL court instructed the plaintiffs to seek reinstatement of the claims from the transferor court. The Court will permit Plaintiffs' fraud on the FDA claims to be reinstated.

L.Ed.2d 29 (1995) (fraudulent advertising and promotion claim survived motion for summary judgment); *Hawkins v. Upjohn Co.*, 890 F.Supp. 609 (E.D.Tex.1994) (motion to dismiss denied where plaintiff alleged FDA relied on defendant's representations and plaintiffs relied on FDA's assessment). A "fraud on the FDA" claim is derived from the Restatement (Second) Torts Section 533.[18] Georgia law supports an indirect fraud claim. *See Florida Rock & Tank Lines, Inc. v. Moore*, 258 Ga. 106, 365 S.E.2d 836 (1988). In *Moore*, the Georgia Supreme Court held the reliance requirement of a fraud claim is satisfied where the defendant intends to defraud the plaintiff, the defendant knows the plaintiff will rely on a third-party, the defendant fraudulently induces the third-party to act, and the plaintiff relies on the act or actions of the third-party and, as a result, is defrauded. *Moore*, 258 Ga. at 107, 365 S.E.2d at 837.

Plaintiffs cannot sustain a claim for fraud on the FDA because Plaintiffs cannot meet the requirements of *Moore*. In the present actions, there is no evidence Defendants intended to defraud the plaintiffs. Even if the Court assumes Defendants intended to defraud the FDA, intent to defraud the FDA is not intent to defraud the plaintiffs. Furthermore, because a physician is permitted to use an FDA approved device for an unapproved use, obtaining clearance for bone screws as sacral rather than pedicle screws does not suggest an intent to defraud the plaintiffs or the FDA. Additionally, there is no evidence from which the factfinder could infer that Plaintiffs relied on any act of the FDA and, similarly, no evidence Defendants knew Plaintiffs would rely on the FDA.[19] The record clearly shows the FDA granted clearance for use as sacral screws. Had

the FDA granted clearance for use as pedicle screws based on misrepresentations by Defendants, perhaps the Court could conclude Defendants fraudulently induced the FDA to act; however the record does not contain evidence that Defendants fraudulently induced the FDA to approve bone screws. Consequently, Plaintiffs' fraud on the FDA claims must fail.

**C. Distributors' Motions for Summary Judgment**

Defendants contend they are entitled to summary judgment because Plaintiffs' claims are barred by the applicable statute of limitations, Georgia laws bars product liability claims against a mere distributor, and Plaintiffs' failure to warn and fraud claims are barred by the learned intermediary doctrine or because of the lack of evidence of causation.

**A. Manufacturer v. Seller liability**

Strict liability for a defective product, as provided at O.C.G.A. § 51-1-11, is applicable only to the manufacturer of a product, not the distributor. *Farmex Inc. v. Wainwright*, 269 Ga. 548, 501 S.E.2d 802 (1998); *Ellis v. Rich's, Inc.*, 132 Ga.App. 430, 208 S.E.2d 331 (1974), *aff'd*, 233 Ga. 573, 212 S.E.2d 373 (1975); *Wansor v. George Hantscho Co.*, 243 Ga. 91, 252 S.E.2d 623 (1979). Plaintiffs failed to address Defendant Youngwood's contention that it is not a product manufacturer and cannot be held strictly liable for any alleged product defect. Therefore, the Youngwood Defendants are entitled to summary judgment on Plaintiffs' strict liability claims.

**B. Causation**

Plaintiffs' remaining claims against the distributor suffer from the same deficien-

---

18. "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will

influence his conduct in the transaction or type of transaction involved." Restatement of Torts (2nd) Section 533.

19. Also, there is no allegation of reliance by the plaintiff on any representation of the FDA. *See, Hawkins*, 890 F.Supp. at 609.

cies identified with respect to the manufacturer. Plaintiffs cannot prove causation with respect to their strict liability, negligence, negligence per se or fraud claims.

Consequently, Plaintiffs' Complaints must be dismissed.

## III. ORDER

In addition to the matters stated above, in Civil Action No. 1:96–CV–3163–RWS, Sofamor Defendants' Motion for Summary Judgment [18–1] is **GRANTED,** and Sofamor Defendants' Motion to Exclude the Testimony of Antonio Aldrete [21–2] is **GRANTED.**

In Civil Action No. 1:96–CV–3164–RWS, Sofamor Defendants' Motion for Summary Judgment [20–1] is **GRANTED,** and Sofamor Defendants' Motion to Exclude the Testimony of Antonio Aldrete [23–2] is **GRANTED.**

In Civil Action No. 1:96–CV–3166–RWS, Defendants Youngwood Medical and Stuart Medical's Motion for Summary Judgment [23–1] is **GRANTED,** Sofamor Defendants' Motion for Summary Judgment [24–1] is **GRANTED,** and Sofamor Defendants' Motion to Exclude the Testimony of Antonio Aldrete [27–2] is **GRANTED.**

In Civil Action No. 1:96–CV–3169–RWS, Youngwood Defendants' Motion for Summary Judgment [23–1] is **GRANTED,** Sofamor Defendants' Motion for Summary Judgment [24–1] is **GRANTED,** and Sofamor Defendants' Motion to Exclude the Testimony of Antonio Aldrete [28–2] is **GRANTED.**