Carlos **DELGADO, et al., Plaintiffs,**

v.

**Desmond McTIGHE, et al., Defendants.**

**Civ. A. No. 76–1206.**

United States District Court, E. D. Pennsylvania.

July 2, 1981.

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiffs.

James D. Crawford, Deena Jo Schneider, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

On June 22–24, 1981, the Court held a class certification hearing in this action, which was instituted on behalf of black and Hispanic law school graduates, each of whom has taken the Pennsylvania bar examination at least once between January 1973 and December 1976. The plaintiffs allege that the grades they received would have been passing grades if the defendant bar examiners[1] had not, on several occasions during this period, raised the minimum passing grade from its 1972 level. These changes, the plaintiffs contend, were done arbitrarily and with the intent to discriminate against black and Hispanic applicants in violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983.

Carlos Delgado and Walter Palmer are the individual named plaintiffs in this action. Mr. Delgado was born, raised and educated in Puerto Rico. Mr. Palmer is black. Both of the named plaintiffs graduated from law school and qualified to sit for the Pennsylvania bar examination beginning in July 1974. Mr. Delgado took the examination in July 1974, February 1975, and July 1975. Mr. Palmer took the examination at these same times and also took it in February 1976 and July 1976. On each occasion they took the bar examination, they were advised that they had failed.

Minimum passing scores for the Pennsylvania bar examination are set by the defendants. Since 1972 the defendants have raised the minimum passing grade on several occasions above the level set for the 1972 bar examinations. The plaintiffs allege that following the 1972 examinations the defendants caused a study to be undertaken by Dr. Robert Bernreuter concerning, *inter alia*, the relative performance of black and white applicants on the 1972 bar examinations. The plaintiffs further allege that Dr. Bernreuter subsequently reported to the defendants that the average score of black applicants was below the average score of white applicants, and that because of this difference, the passing grade has a profound effect on the percentage of blacks who pass.

The plaintiffs also allege that the placement of the passing grade for the 1972 bar examinations did not result in screening out a disproportionately large number of black and Hispanic applicants, that this fact was known to the defendants, and that despite being advised by Dr. Bernreuter of the critical impact on minorities of selecting a higher passing grade, the defendants proceeded to raise the passing grade for bar examinations after 1972. The plaintiffs contend that raising the passing grade had the expected effect of causing a disproportionately large number of black and Hispanic applicants to fail.

According to the plaintiffs, the passing grade set for the 1972 bar examinations more accurately distinguished between qualified and unqualified applicants than the higher passing grades set for later exams. The plaintiffs also contend that there was no justification reasonably related to the aim of distinguishing between qualified and unqualified examinees supporting the defendants' decision to raise the minimum passing grade from its 1972 level. The plaintiffs allege that the defendants, each time they raised the passing grade between January 1973 and December 1976, knew and intended that their actions would reduce the number and percentage of blacks and Hispanics passing the bar examination.

On one or more occasions, both Mr. Delgado and Mr. Palmer achieved scores on the

---

1. In a Memorandum and Order dated December 1, 1977, the Court dismissed the Commonwealth of Pennsylvania State Board of Law Examiners. *Delgado v. McTighe*, 442 F.Supp. 725 (E.D.Pa.1977).

bar examination which were equal to or higher than the minimum passing score which had been set by the defendants for the bar examinations held in 1972. Thus, had the defendants not increased the minimum passing score above that which prevailed in 1972, the plaintiffs would have passed the Pennsylvania bar examination.

The named plaintiffs contend that they are not the only blacks and Hispanics similarly affected by the defendants' actions. The plaintiffs therefore seek to certify a class of all black and Hispanic persons who graduated from law schools accredited by the American Bar Association, who took the Pennsylvania bar examination one or more times between January 1973 and December 1976 and failed that examination, but who received on one or more occasions a grade equal to or higher than the minimum passing grade set by defendants for the bar examinations held in 1972.

■ Fed.R.Civ.P. 23(a) defines the prerequisites for the maintenance of a class action. Rule 23(a) provides:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The burden of demonstrating that all of the requirements of Rule 23(a) have been met rests on the party seeking to utilize the class action mechanism. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). "It is now clear that placing the burden on the class representative to show there is a class and his right to represent it does not mean that he must establish his own case on the merits before a preliminary determination of the class question can be made." 3B Moore's Federal Practice ¶ 23.02–2, at 23–97

(2d ed. 1980). However, the plaintiffs must set forth sufficient factual information to enable the Court to reasonably permit the action to continue as a class action under Rule 23. *Hannigan v. Aydin Corp.*, 76 F.R.D. 502 (E.D.Pa.1977). In ruling on a motion for class certification, the Court may consider reasonable inferences drawn from the facts before it at this stage of the proceedings. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976).

■ Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." This issue is sometimes referred to as "numerosity." Impracticability and numerosity depend on the particular facts of each case and no hard and fast rules have been established by the courts as a basis for making this determination. In connection with the numerosity requirement, the plaintiffs need not show the exact number of potential members in order to satisfy the requirement. However, the plaintiffs do have the burden of showing that the size is such that the joinder of all members is impracticable. Mere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1). 7 Wright & Miller, § 1762, at 595 (1972). The Court concludes that the plaintiffs have failed to meet their burden with respect to numerosity and thus need not consider the other requirements of Rule 23(a).

At the class certification hearing, the plaintiffs had Dr. James Portwood, an assistant professor of organizational behavior and industrial relations at Temple University, testify concerning the results of a survey dealing with the failure rate of blacks and Hispanics in connection with the Pennsylvania bar examinations during the period in question. Dr. Portwood testified that the survey showed: (1) of the fifteen times a Hispanic took the examination in the relevant time period, there were eleven failures; and (2) of the 539 times a black took the examination in the relevant time period, there were 337 failures. Dr. Portwood testified, however, that this survey was done

on the basis of "multiple counting," i. e., if a black or Hispanic had failed the bar examination five times during the relevant time period, his performance would account for five, and not one, of the failures reported in the survey.

The survey was of no help to the Court in determining whether the numerosity requirement was satisfied. Dr. Portwood, in testifying concerning the results of the survey, stated that the survey did not show the number of blacks and/or Hispanics who would have passed the bar examination during the relevant time period if the passing grade had not been raised from its 1972 level. The plaintiffs' survey only showed the number of "multiple counted" failures of blacks and Hispanics. It did not disclose the number of blacks and Hispanics who failed the bar examination solely because the passing grade was raised from its 1972 level by the defendants, which is the class for whom the plaintiff seeks certification.

The testimony of the named plaintiffs was also presented in an attempt to satisfy the numerosity requirement. Mr. Delgado testified that he knew of other Hispanics who sat for the bar examination during the relevant time period and failed the bar examination. Mr. Palmer testified that he knew of approximately one dozen other black people who sat for the bar examination during the relevant time period and failed the bar examination. Neither of them, however, testified that any of the blacks or Hispanics whom they knew that failed the bar examination would have passed if the grade had not been raised from its 1972 level.

The plaintiffs correctly contend that there is no "magic number" in determining whether the numerosity requirement has been met. However, the critical failure of the plaintiffs in their attempt to certify a class is that no facts were produced that any blacks or Hispanics other than the named plaintiffs who failed the bar examination in the relevant time period would have passed the examination if the defendants had not raised the passing grade from its 1972 level. In other words, no evidence

was presented showing that any black or Hispanic other than the named plaintiffs failed the bar examination in the relevant time period solely because the defendants raised the passing grade above its 1972 level. As recently pointed out by our Third Circuit in *Mazus v. Department of Transportation*, 629 F.2d 870 (3d Cir. 1980), the plaintiffs cannot satisfy the numerosity requirement without showing that some other person beside themselves is similarly situated. The Court in *Mazus* also stated that statistical evidence which is "ambiguous at best" cannot serve to satisfy the numerosity requirement of Rule 23(a). *Id.* at 876.

The fact that a number of blacks and Hispanics other than the plaintiffs might have passed the Pennsylvania bar examination between January 1973 and December 1976 if the defendants had not raised the passing grade from its 1972 level is not a fact of which the Court can take judicial notice, especially since the grades of the Pennsylvania bar examination are not made public. Furthermore, as the plaintiffs have conceded, there are a number of blacks and Hispanics, including one of the original named plaintiffs, who have passed the Pennsylvania bar examination subsequent to their initial failure of the examination. The Tenth Circuit, in *Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432 (10th Cir. 1978), stated that

there must be presented some evidence of established ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement.

*Id.* at 436.

On the basis of the record, the Court concludes that the plaintiffs have failed to carry their burden of proving that the members of the class are "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).

The defendants also contend that the survey and any testimony based on the survey is not admissible evidence since it is hearsay. The defendants, at the class certification hearing, moved to strike the portion of the testimony of Dr. Portwood which was

based on the survey.[2] The plaintiffs concede that the survey is hearsay but claim that it comes within the "catch all" exception of Fed.R.Evid. 803(24), which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Prior to conducting the survey, plaintiffs' counsel obtained a list from the defendants which contained: (1) the names of all of the applicants who sat for the bar examinations during the period in question; (2) the law school from which the applicant graduated; (3) the number of times that the applicant sat for the bar examination during the period in question; (4) the grade obtained by the applicant each time the applicant took the bar examination; and (5) whether the grade obtained by the applicant was a passing grade. Plaintiffs' counsel and Dr. Portwood then devised a form which was sent to each of the 169 law schools which appeared on the lists compiled by the defendants. The form contained the names of all the people who had graduated from that particular law school and who sat for the Pennsylvania bar examination during the relevant time period. The form required the law schools to designate the graduate as "White," "Black," "Hispanic," "Other," or "Not Known." A letter signed by plaintiffs' counsel and written on the stationery of the firm of plaintiffs' counsel was also sent with the form to the law schools. The first two sentences of the letter stated:

We are counsel for plaintiffs in the case of Carlos Delgado vs. the Pennsylvania State Board of Law Examiners, Civil Action No. 76–1206 now pending in the United States District Court for the Eastern District of Pennsylvania. As part of the pretrial preparation of the case we are attempting to perform a statistical analysis of the rates at which various groups have passed the Pennsylvania Bar Examination over the past ten years.

At the class certification hearing, the plaintiffs had two paralegals who were employed by the law firm of plaintiffs' counsel testify that they assembled and forwarded to Dr. Portwood the information obtained from the law schools which completed the form sent to them by plaintiffs' counsel. The evidence at the hearing showed that 58 of the 169 law schools did not complete the form or provide any of the information requested by plaintiffs' counsel. Furthermore, of the 7,352 bar examinations given during this period, forms were received for only 2,209, or approximately 30%, of the examinations given. The combined pass rate for the eight bar examinations given in this time period was 89%, while the pass rate for the sample obtained by plaintiffs' counsel was only 74%.

It would appear as of now that the plaintiffs have not carried their burden of proving that the survey contains the "circumstantial guarantees of trustworthiness" required for the admissibility of a survey under Rule 803(24) and the decision of our Third Circuit in *Pittsburgh Press Club v. United States*, 579 F.2d 751 (3d Cir. 1978). In *Pittsburgh Press, supra*, the Court stated that "the circumstantial guarantees of trustworthiness are for the most part satisfied if the poll is conducted in accordance with generally accepted survey principles." *Id.* at 758. The Court then discussed several factors which must be

examined when determining whether a poll meets generally accepted survey principles. A proper universe must be examined and a representative sample must be chosen; the persons conducting

---

**2.** The survey itself was not moved into evidence at the hearing.

the survey must be experts; the data must be properly gathered and accurately reported. It is essential that the sample design, the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques. Just as important, the survey must be conducted independently of the attorneys involved in the litigation. The interviewers or sample designers should, of course, be trained, and ideally should be unaware of the purposes of the survey or the litigation. A fortiori, the respondents should be similarly unaware.

*Id.*

The evidence at the class certification hearing clearly showed that the survey was not conducted independently of the attorneys involved in the litigation. Plaintiffs' counsel was actively involved in designing the form of the survey, sending the forms to the law schools, and collecting the data when it was returned to his office. The law schools were also aware that the survey was being prepared for litigation because plaintiffs' counsel so stated in the letter he sent to the law schools along with the forms which he and Dr. Portwood devised. Furthermore, Dr. Portwood testified that he was unable to state with certainty that the responses obtained from the law schools were representative of the universe in either size or with respect to the variation in the pass rate between the universe and the sample. The record shows that there is no way of ascertaining the definitions of "Black," "White," or "Hispanic" used by the personnel at the law schools who completed the forms sent to them. The law schools were not provided with definitions of these terms and, as Dr. Portwood testified, there has been a divergence of opinion as to who is a "Hispanic." For these reasons, the survey might lack the "circumstantial guarantees of trustworthiness" necessary for it to be admissible in evidence.

On March 28, 1978, the Court approved a stipulation between the parties that the determination of a class be stayed pending completion of discovery. This action was instituted in 1976 and the plaintiffs have had five years to identify the members of a class. Numerous discovery deadlines were set and extended by the Court in order to afford the parties every opportunity to complete discovery in this litigation. The date for completion of discovery has been extended on four separate occasions (March 6, 1978, September 29, 1979, January 18, 1980 and April 23, 1980). This action has been listed three times for trial and will be tried within the next thirty days. The Court at this point must deny the plaintiffs' motion for class certification and proceed to trial on the merits with only the named plaintiffs.

An appropriate order will accordingly be entered.