Betty DUKES, Patricia Surgeson, Cleo Page, Deborah Gunter, Karen Williamson, Christine Kwapnoski, and Edith Arana, on behalf of themselves and all others similarly situated, et al., Plaintiffs,

v.

WAL–MART, INC., Defendant.

No. C01–02252 MJJ.

United States District Court, N.D. California.

June 21, 2004.

Nancy L. Abell, Paul, Hastings, Janofsky & Walker LLP, Los Angeles, CA, Katherine A. Alberts, Jones Day, San Francisco, CA, Steven T. Catlett, Lawrence C. DiNardo, John L. Strauch, Jones, Day, Reavis & Pogue, Chicago, IL, Catherine M. Dacre, Gilmore F. Diekmann, Jr., Janine Simerly, Seyforth, Shaw, LLP, San Francisco, CA, John W. Edwards, Jones, Day, Reavis & Pogue, Menlo Park, CA, Katherine C. Huibonhoa, Paul, Hastings, Janofsky & Walker LLP, San Francisco, CA, Barbara L. Johnson, Neal D. Mollen, Paul, Hastings, Janofsky & Walker LLP, Washington, DC, for defendant.

Merit Bennett, Charles V. Firth, Tinkler & Firth, Santa Fe, NM, Debra Gardner, Baltimore, MD, Jocelyn D. Larkin, Brad Seligman, The Impact Fund, Berkeley, CA, Elizabeth Lawrence, Davis, Cowell & Bowe, Shauna Marshall, Hastings College of the Law, Doris Ng, Equal Rights Advocates, San Francisco, CA, Joseph Sellers, Deborah Vagins, Christine E. Webber, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Jonathan Smith, Public Justice Center, Baltimore, MD, Steve Stemerman, Davis, Cowell & Bowe, Sheila Thomas Equal Rights Advocates, San Francisco, CA, Stephen Tinkler, Tinkler & Bennett, Santa Fe, NM, for plaintiffs.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND DEFENDANT'S MOTIONS TO STRIKE EXPERT AND NON–EXPERT TESTIMONY

JENKINS, District Judge.

### INTRODUCTION

In conjunction with the Motion for Class Certification, both parties have filed a number of motions to strike particular portions of the evidence. With respect to the expert testimony, Defendant moves to strike the declarations of William Bielby and Marc

Bendick in their entirety, and a small portion of the declaration of Richard Drogin. Plaintiffs move to strike portions of the declaration of Joan Haworth. With respect to the non-expert testimony, Defendant moves to strike portions of the declarations of the named plaintiffs and designated class members while Plaintiffs move to strike declarations filed by store managers. The Court discusses each motion in turn.

## DISCUSSION

### I. MOTIONS TO STRIKE EXPERT TESTIMONY

#### A. *Legal Standard*

As discussed in the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, filed simultaneously herewith ("Class Certification Order"), arguments on the merits are improper at this stage of the proceedings. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Selzer v. Bd. of Educ. of City of New York,* 112 F.R.D. 176, 178 (S.D.N.Y.1986) ("[a] motion for class certification is not the occasion for a mini-hearing on the merits"). Accordingly, courts should avoid resolving "the battle of the experts." *See Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 292–93 (2d Cir.1999) (district court may not weigh conflicting expert evidence or engage in "statistical dueling" of experts). Indeed, courts should not even apply the full *Daubert* "gatekeeper" standard at this stage. *See Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[1] Rather, "[i]t is clear to the Court that a lower *Daubert* standard should be employed

at this [class certification] stage of the proceedings." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.,* 209 F.R.D. 159, 162–63 (C.D.Cal.2002); *see also O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 321 n. 7 (C.D.Cal. 1998) (*Daubert* inquiry inappropriate at class certification stage).

■ This does not mean, however, that courts must uncritically accept all expert evidence that is offered in support of, or against, class certification. Rather, the question is whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met. *See In re Polypropylene Carpet Antitrust Litigation,* 996 F.Supp. 18, 26 (N.D.Ga.1997) (at class certification stage court only examined whether the expert's methodology will (a) comport with basic principles, (b) have any probative value, and (c) primarily use evidence that is common to all members of the proposed class); *Bacon v. Honda of America Mfg., Inc.,* 205 F.R.D. 466, 470–71 (S.D.Ohio 2001) (" 'For common questions to exist, plaintiffs' statistical evidence must logically support the inference of discrimination against the class asserted.' ") (citation omitted); *see also Dean v. The Boeing Co.,* 2003 U.S. Dist. LEXIS 8787 at *33–35 (D.Kansas) (at class certification stage, court should only determine whether expert testimony is so fatally flawed as to be inadmissible as a matter of law). It is with these principles in mind that the Court considers the parties' respective motions.

#### B. *Defendant's Motion to Strike Declaration of William Bielby*

■ As discussed in the Class Certification Order, Dr. Bielby conducted a "social framework analysis" by combining an extensive review of documents and deposition testimony regarding Wal–Mart's culture and practices with his knowledge of the profes-

---

**1.** In *Daubert,* the Court charged trial judges with the responsibility of acting as gatekeepers at trial to " 'ensure that any and all scientific testimony ... is not only relevant, but reliable.' " 509 U.S. at 589, 113 S.Ct. 2786 (citation omitted). In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–48, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court clarified that this gatekeeper function

applies to all expert testimony, not just testimony based in science. As the Ninth Circuit has explained, the district court's role under *Daubert* is to separate inadmissible opinions based on "junk science" from those based on scientific method. *Lust v. Merrell Dow Pharmaceuticals, Inc.,* 89 F.3d 594, 597 (9th Cir.1996).

sional research and literature in the field. This is an acceptable social science methodology. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 235–36, 255, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (considering similar evidence by an expert social psychologist); Fed.R.Evid. 702 (referring to "scientific, technical, or other specialized knowledge"). Dr. Bielby's testimony on sex stereotyping also has been admitted in prior cases in this district. *See Butler v. Home Depot, Inc.,* 984 F.Supp. 1257, 1265 (N.D.Cal.1997); *Stender v. Lucky Stores, Inc.,* 803 F.Supp. 259, 301–03, 327 (N.D.Cal.1992).[2]

Defendant raises a plethora of challenges to Dr. Bielby's opinions. Having reviewed them, the Court concludes that they are of the type that go to the weight, rather than the admissibility, of the evidence. The most significant criticism is that Dr. Bielby cannot determine with any specificity how regularly stereotypes play a meaningful role in employment decisions at Wal–Mart. At his deposition, for example, Dr. Bielby conceded that he could not calculate whether 0.5 percent or 95 percent of the employment decisions at Wal–Mart might be determined by stereotyped thinking. *See* Def.'s Mtn. to Strike re Bielby at 9 (citing Bielby Depo. at 87–88, 161–62, 370–71). While this could present a difficulty for Plaintiffs at trial, the question here is whether Dr. Bielby's opinion is so flawed that it lacks sufficient probative value to be considered in assessing commonality.

Plaintiffs concede that Dr. Bielby cannot quantify the degree of gender stereotyping at Wal–Mart, but argue that such quantification is not necessary.[3] *See* Pls.' Opp. re Motion to Strike re Bielby at 11. They point to *Price Waterhouse,* in which the trial court relied on a social psychologist's testimony that the defendant was "likely influenced by sex stereotyping," even though the expert "admitted that she could not say with certainty whether any particular comment was the result of stereotyping." *Price Water-*

*house,* 490 U.S. at 235–36, 109 S.Ct. 1775; *cf. Costa v. Desert Palace, Inc.,* 299 F.3d 838, 861 (9th Cir.2002), *aff'd,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (recognizing relevance of lay testimony regarding gender stereotyping).

The Court is further guided by *Daubert v. Merrell Dow Pharm., Inc. (Daubert II),* 43 F.3d 1311, 1316 (9th Cir.1995), in which the Ninth Circuit stated that scientific knowledge "does not mean absolute certainty," and that expert testimony should be admitted when "the proffered testimony is 'based on scientifically valid principles.'" *Id.,* quoting *Daubert I,* 509 U.S. 579, 113 S.Ct. 2786. The Ninth Circuit continued: "Our task, then, is to analyze not what the experts say, but what basis they have for saying it." *Daubert II,* 43 F.3d at 1316. The Court is satisfied that Dr. Bilby's opinion—while subject to critique—is based on valid principles. Thus, it is sufficiently probative to assist the Court in evaluating the class certification requirements at issue in this case. Accordingly, Defendant's motion to strike Dr. Bilby's declaration is denied.

### C. *Defendant's Motion to Strike Declaration of Marc Bendick*

Defendant moves to strike the entire declaration of Plaintiffs' expert labor economist, Dr. Marc Bendick on the grounds that (1) Plaintiffs should not be allowed to profit from Dr. Bendick's alleged misuse of Equal Employment Opportunity Commission ("EEOC") confidential material, and (2) Dr. Bendick's testimony should be rejected on the merits.

#### 1. *Dr. Bendick's Use of EEO–1 Data*

█ As discussed in the Class Certification Order, Dr. Bendick performed a benchmarking analysis to compare Wal–Mart's female promotion rates into salaried in-store management positions with that of similarly situated companies. He derived the data on

---

**2.** Defendant does not challenge Dr. Bielby's qualifications as an expert.

**3.** Plaintiffs further argue that the impact of even small decisions accumulates over the course of employees' careers. But this argument misses

the mark. Defendant's point is that there may be a very small *total* number of decisions affected by sex stereotyping, not that there are numerous decisions that are qualitatively too insignificant to matter.

the comparator companies mostly from the EEOC in the form of "EEO–1" reports. Defendant contends that the EEO–1 data is confidential, that Dr. Bendick obtained it through false pretenses, that his use of the data in this litigation is a crime, and that Plaintiffs failed to fully produce the EEO–1 data in discovery. The Court concludes, after fully considering Defendant's objections, that there is no basis to strike the declaration.

### a. Whether Dr. Bendick Violated EEOC Regulations

Under authority granted by Title VII, the EEOC collects statistics on the gender and racial composition of the workforce for all employers with 100 or more employees. 42 U.S.C. § 2000e–8(c)(3). Companies are required to submit this data—referred to as EEO–1 reports—on an annual basis. 29 C.F.R. § 1602.7; 41 C.F.R. § 60–1.7. The EEOC assembles this wealth of data and generally aggregates it into groupings of at least three responding entities per data set, without revealing the identities of the entities in order to preserve a level of confidentiality for the reporting companies. See 29 C.F.R. § 1610.18(a). EEOC officials are barred from breaching the confidentiality of reporting entities. 42 U.S.C. § 2000e–8(c)(3) & § 2000e–8(e). Notably, the regulations do not explicitly apply to anyone other than the EEOC.

Dr. Bendick received EEO–1 data in anonymous *disaggregated* form (i.e. the data is separately reported for each individual, albeit unidentified, company) from EEOC officials for research in connection with a foundation grant. EEOC staff have submitted declarations stating that they produced the EEO–1 data to Dr. Bendick in disaggregated form on the understanding that it would be used exclusively for research and not for litigation, and consider Dr. Bendick's use of the data in this case to be a breach of good faith. See Neckere Decl. ¶¶ 5, 12; Edwards Decl. Dr. Bendick, in contrast, has testified in deposition that he apprised the EEOC that he would use the data for more than just research. The Court need not resolve this credibility contest, because, as discussed below, defendant has failed to identify any law or regulation that would create a use-limitation duty for Dr. Bendick.

First, the applicable regulation, which provides that the EEOC routinely will make available aggregated EEO–1 data, does not bar the EEOC from ever releasing disaggregated data, just so long as confidentiality is protected. See 29 C.F.R. § 1610.18(a). Indeed, in this instance the EEOC officials presumably were following their own understanding of the law when providing Dr. Bendick with the information in the first place, and Mr. Neckere states that disaggregated, anonymous EEO–1 data has been provided to other individuals "a couple of other times in the past several years." See Neckere Decl. ¶ 10. Moreover, even if the regulation strictly forbade disclosure of all disaggregated data, it still does not appear to apply to private individuals, but rather governs only the EEOC's actions.

Second, while Defendant criticizes Dr. Bendick for figuring out the identities of some of the reporting companies in the EEO–1 reports, there does not appear to be any law or regulation prohibiting a private individual from making such assessments. Moreover, Dr. Bendick obtained Wal–Mart's EEO–1 reporting number legitimately through discovery in this litigation. He determined Target's EEO–1 identity because the company volunteered the information to Plaintiffs. For the other companies, Dr. Bendick has only determined that, taken as a group, the largest sets of data belong to well known large retailers (such as Costco and J.C. Penny) but he cannot (and does not) identify which company matches which particular data set. Bendick Decl. ¶¶ 21–23. Accordingly, Defendant has failed to establish that Dr. Bendick breached any confidentiality obligation. At worst, Dr. Bendick may have misled the EEOC with respect to the purposes for which the data would be used. But this interpretation of the facts is open to question. Regardless, the Court is not persuaded that legal or other grounds justify sanctioning Plaintiffs by striking Dr. Bendick's declaration.

### b. Production of the Full EEO–1 Data

■ Defendant also complains that Plaintiffs produced in discovery only the EEO–1 data that Dr. Bendick *used* from the companies he selected, rather than producing the entire database received from the EEOC. *See* Def.'s Motion to Strike re Bendick at 8; Haworth Decl. ¶ 309. Thus, Defendant contends that it is limited in its ability to challenge Dr. Bendick's conclusions by analyzing the full data set in its own manner. Defendant presents this argument as "a matter of equity." Def.'s Motion at 8. However, it is clear that Defendant never properly requested the entire data file. Its deposition subpoena demanded "all of the data on which he [Dr. Bendick] relied for his opinions in this case." Defendant did not ask for the entire data set that Dr. Bendick received from the EEOC. It is telling that Defendant did not move to compel further production at the time, and it is far too late now to attempt the equivalent in the context of these proceedings.

Furthermore, it appears that the data produced by Dr. Bendick included all EEO–1 reports for all companies of all sizes in every industrial category comparable to Wal–Mart. Upon review of Dr. Haworth's analysis of the benchmarking issue, the Court observes that she had access to a wide range of data that goes well beyond just the twenty comparator companies that Dr. Bendick selected. In fact, she did an extensive analysis of all companies reporting to the EEOC in seven general industrial groupings, which was sufficient data for her to draw her own conclusion in opposition to Dr. Bendick. *See* Haworth Decl. ¶ 310. Thus, Defendant's argument that all it could do was to "check Bendick's math on his self-defined 20 'comparators'" is not supported by the record. *See* Def.'s Reply re Motion to Strike Bendick at 5. Further, while Defendant argues that it *might* have been able to find something in the full data set to support its position, it fails to show that there are any industry categories missing from the data that are comparable to Wal–Mart.

### 2. Defendant's Arguments on the Merits

■ Besides its evidentiary objections to the use of the EEO–1 data, defendant raises various challenges to Dr. Bendick's expert opinion on the merits, none of which justify striking the declaration under the standards set forth above. First, Defendant argues that Dr. Bendick's analysis is flawed because he did not base his analysis on Wal–Mart's limited internal applicant flow data. As discussed in the Class Certification Order, however, this objection is an insufficient basis for striking Dr. Bendick's declaration. *See* Class Certification Order, section I.B.2.b(3). Rather, where, as here, actual applicant flow data is very limited, alternative means of determining whether a promotion shortfall exists for women are appropriate, including the benchmarking method. *Id.*

Second, Defendant argues that Dr. Bendick " 'cherry-picked' his comparators from a few, narrow lines of business, such as traditional department and general discount stores, where managers historically are largely female." Def.'s Motion to Strike re Bendick at 14. Again, as explained in the Class Certification Order, the record does not support this contention. Further, Defendant's criticism of Dr. Bendick's benchmarking analysis is of the type that clearly goes to the weight, rather than the admissibility, of the evidence.

Third, Defendant contends that Dr. Bendick's choice of comparators is flawed because Wal–Mart, in contrast to other retailers, does not include its Department Managers (the lowest hourly management position), which are 75 percent female, in its EEO–1 managers category. Inclusion of this category would raise Wal–Mart's representation of women among all in-store managers from 34.5 percent to 63 percent, making their representation in management better rather than worse than the comparators. Defendant's argument, however, is based on speculation, and is not supported by any evidence in the record. Moreover, Dr. Bendick tested Wal–Mart's hypothesis in a number of ways and concluded that it was extremely unlikely that Wal–Mart and the comparators had significantly different

managerial reporting protocols.[4] Although Defendant had the opportunity to respond to these tests, it failed even to mention them. Accordingly, the Court finds Dr. Bendick's opinion sufficiently probative to assist the Court in evaluating the class certification requirements at issue in this case, and therefore declines to strike Dr. Bendick's declaration.[5]

### D. Defendant's Motion to Strike Portion of Declaration of Richard Drogin

Defendant moves to strike a minor portion of the declaration of Plaintiffs' statistician, Dr. Richard Drogin, due to an error in one of his computations. This motion was filed after Plaintiffs' class certification reply brief was filed. While it would be appropriate for the Court to deny this motion as untimely, the Court exercises its discretion to address the merits of the motion. As discussed more fully in the Class Certification Order, Drs. Drogin and Haworth conducted separate regression analyses to determine whether Wal–Mart has engaged in gender discrimination with respect to pay. Each expert used different approaches—Dr. Drogin analyzed the data at the regional level, and Dr. Haworth analyzed the data at the store sub-unit level. After Dr. Haworth submitted her store sub-unit regression analyses, Dr. Drogin took all of Dr. Haworth's sub-unit analyses and aggregated the results. Based on this calcula-

tion, he reported that even Defendant's methodology shows an average pay shortfall for women of 12 cents per hour. Defendant subsequently pointed out that Dr. Drogin had double-counted certain data, and that the 12 cents differential should be reduced to nine cents, a point which Dr. Drogin concedes. Suppl. Drogin Decl. in Support of Plaintiffs' Reply re Motion for Class Certification ¶ 5. Accordingly, Defendant's motion is granted. The Court, notes, however, that this ruling does not affect the Court's determination of the class certification issues since this correction does not pertain to the inference of discrimination that arises from Dr. Drogin's own regression analyses.

### E. Plaintiffs' Motions to Strike Portions of Declaration of Joan Haworth

#### 1. Motion to Strike re Regression Analyses

■ Plaintiffs move to strike twelve separate portions of the declaration of Defendant's statistical expert, Dr. Joan Haworth, as a sanction under Federal Rule of Civil Procedure 37(c)(1) because Dr. Haworth did not timely disclose the full extent of her expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2).[6]

In order to exclude evidence under Rule 37(c)(1), the Court must find that the Rule

---

4. Dr. Bendick calculated the average number of managers per store in both Wal–Mart and the comparators, and he arrived at essentially the same number for both. He also did a more specific test by comparing the number of female managers at Wal–Mart with the number of female managers at the comparator firms with essentially the same number of managers per store. This refined comparison *increased* the disparity between Wal–Mart and the comparators in the proportion of women in management. Bendick Decl. ¶¶ 36–41.

5. Defendant also notes that Dr. Bendick's testimony has been rejected by the Sixth and Eleventh Circuits. *See Middleton v. City of Flint*, 92 F.3d 396, 406 (6th Cir.1996); *United States v. City of Miami*, 115 F.3d 870, 872 (11th Cir.1997). However, those cases are readily distinguishable. In *Middleton*, Dr. Bendick used the city's general labor pool as the relevant population for comparison, and in *City of Miami* he used general census data. The courts generally are skeptical of using such generalized sources because census

and general population data are likely to contain many people who would not be qualified or interested in the particular jobs at issue in a given case. Here, in contrast, Dr. Bendick corrected for that problem by using a far more narrowly focused source for comparison, i.e. female retail employees at large chain stores. This methodology comports with general benchmarking practices and is similar to comparisons that have been generally accepted by the courts. *See, e.g., International Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 337 n. 17, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Furthermore, the Court notes that Dr. Bendick's testimony has been accepted by courts in well over a dozen cases. *See, e.g., Butler v. Home Depot*, 1997 WL 605754 at *5 (N.D.Cal. Aug. 29, 1997).

6. Federal Rule of Civil Procedure 26(a)(2) provides that parties must make an initial disclosure of each expert who may appear at trial, and that the disclosure must be accompanied by a written report containing a complete statement of all opinions to be expressed by the expert.

26(a) violation was both unjustified and prejudicial to plaintiffs:

> A party that *without substantial justification* fails to disclose information required by Rule 26(a) ... is not, *unless such failure is harmless,* permitted to use as evidence ... on a motion ... information not so disclosed.

Fed. R. Civ. Proc. 37(c)(1) (emphasis added); *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998).

The parties stipulated to an expert discovery schedule. *See* Stipulation and Order Regarding Discovery and Class Certification Deadlines and Other Matters, filed November 26, 2002. Dr. Haworth timely filed her report, then amended it three days before her deposition, and provided a new disk with back-up data supporting her analyses at her deposition. Subsequently, Dr. Haworth submitted a declaration in support of Defendant's opposition to class certification, which contains a number of changes from her original report. As one measure of the difference, her original report is 118 pages long, while her declaration is 178 pages long. The declaration substantively differs from the original report by responding to certain assertions in Dr. Drogin's rebuttal expert report, by summarizing information that was included in tables or in cursory fashion in the report, and by expanding on her earlier tests.

While Defendant's justifications for these changes vary, the Court need not address them in detail because Plaintiffs fail to establish sufficient prejudice. The only issue of prejudice worthy of discussion here is in regard to the "Chow" test. As discussed in the Class Certification Order, Defendant argues that Dr. Drogin's approach is flawed because he failed to apply the Chow test prior to aggregating his data on the regional level. In her report, Dr. Haworth stated that she conducted a Chow test and "found that it was statistically inappropriate to pool all ... hourly associates in one regression model" as Dr. Drogin did. Haworth Report at 106 (Suppl. Seligman Decl. re Motion to Strike Haworth, Ex. 3). Plaintiffs argue that the Chow test referenced in the report was conducted on her *own* model, and that she never said that she had conducted a Chow

test on Dr. Drogin's model until submitting her declaration; thus, using the Chow test to directly attack Dr. Drogin is untimely. *See* Haworth Decl. ¶ 183. Neither party, however, has provided sufficient details of how the Chow test is actually performed to enable the Court to satisfactorily assess the import of whose model is subjected to the Chow test. Accordingly, Plaintiffs have not met their burden of demonstrating prejudice.

### 2. *Motion to Strike References to Store Manager Survey*

■ Dr. Haworth's declaration relies in part on a survey undertaken by Defendant of a number of its store managers. Plaintiffs contend that the survey is so inherently flawed and biased that it does not meet the standards of Federal Rules of Evidence ("FRE") 702 and 703. Accordingly, Plaintiffs move to strike those portions of her declaration which discuss the survey.

FRE 702 provides that an expert's testimony must be "the product of reliable principles and methods." FRE 703 provides that the facts or data relied upon by an expert need not be independently admissible so long as the evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." The party proffering the expert has the burden of showing that the requirements for admissibility of the expert's testimony have been satisfied. *See Lust by and through Lust v. Merrill Dow Pharmaceuticals, Inc.,* 89 F.3d 594, 598 (9th Cir.1996); *Bennett v. PRC Public Sector, Inc.,* 931 F.Supp. 484, 489–90 (S.D.Tex.1996).

The survey at issue consists of declarations obtained from 239 Wal–Mart store managers randomly selected by Defendant. Each store manager was asked a series of identical questions about a number of issues, including the factors they use to set pay rates and make job placement decisions. The answers from each store manager were recorded in declaration form, the store manager signed the declarations, and the results were tallied. *See* Seligman Decl. in Support of Pls.' Motion to Strike Store Manager Declarations, Ex. 4 (sample declaration). Dr. Haworth relies on the survey results to (1) challenge Dr. Drogin's decision to aggregate and analyze data at the regional level, and (2) support her own

decision to disaggregate and analyze data on a store sub-unit by sub-unit basis.

It is undisputed that Defendant's counsel and Defendant developed and prepared the survey instrument and administered the survey. *See, e.g.,* Haworth Depo. at 255:13–22 (Seligman Decl. Ex. 6). ("My understanding is the attorneys recorded the information that the store managers were giving them"). Indeed, Defendant refused to respond to Plaintiffs' discovery requests regarding the design and administration of the survey on grounds of attorney-client privilege. In addition, Defendant does not dispute that the surveyed managers knew that the surveys were being utilized in connection with this litigation. Dr. Haworth also is on record as stating that she told a least one lawyer for Defendant that having the attorneys conduct the survey was not a good idea because "typically it's difficult for an attorney to collect the information in a neutral environment so that they truly get a neutral set of information back." Haworth Depo. at 254:14–17.

The survey instrument in this case also is biased on its face. For example, instead of asking Store Managers opened-ended questions, such as "what factors do you rely upon in setting individual pay rates?" the survey provided Store Managers with a set list of over 100 suggestive factors, with the chance to add additional factors tacked on at the very end. *See* Seligman Decl., Ex. 4 at ¶ 13. The sex of the employee was never identified as a possible factor. Another question was based on the express assumption that the Store Manager encouraged women to apply for the management trainee program. *Id.* at ¶ 16.

In sum, the record demonstrates that the survey was designed and administered by counsel in the midst of litigation, the interviewees knew the survey was related to the litigation, and the survey instrument exhibits bias on its face. Taken together, these factors plainly demonstrate that the results from the survey are not the "product of reliable principles and methods," and therefore are not the type of evidence that would

be "reasonably relied upon by experts." Fed.R.Evid. 702, 703. Even Dr. Haworth conceded, after Plaintiffs obtained an opinion from an expert in survey methods, that the declarations do not qualify as a valid survey because the data was not collected in "an anonymous and neutral setting." Haworth Decl. at 93, n. 114; Seligman Decl., Ex. 7; Presser Decl. (expert opinion that "the survey of Wal–Mart managers does not meet generally accepted standards for the conduct and reporting of surveys").

Not surprisingly, courts have refused to allow surveys made under such circumstances, usually rejecting them on grounds of being unreliable hearsay. *See, e.g., Pittsburgh Press Club v. United States,* 579 F.2d 751, 756–57 (3rd Cir.1978) (survey must be conducted independently of attorneys involved in the litigation and respondents should not be aware of purpose of the survey); *Yapp v. Union Pacific Railroad Co.,* 301 F.Supp.2d 1030, 1037(E.D.Mo.2004) (rejecting experts' survey where there was "heavy involvement of defense counsel in [its] design and conduct"); *Gibson v. County of Riverside,* 181 F.Supp.2d 1057, 1067–68 (C.D.Cal.2002) (same); *Delgado v. McTighe,* 91 F.R.D. 76, 80–81 (E.D.Pa.1981) (same).[7]

Defendant responds that basic survey standards should not apply here because the declarations were never intended to be a "scientific survey;" rather, they are just a collection of declarations. Dr. Haworth repeatedly referred to and treated the 239 declarations as a "survey," in both her deposition and expert report. *See, e.g.,* Haworth Expert Report at 42–45 (Seligman Decl. Ex. 1); Haworth Depo. at 176, 238–243, 247–252 (Seligman Decl., Ex. 6). The Court flatly rejects Defendant's disingenuous effort to recharacterize the survey at the eleventh hour as simply a collection of declarations.[8]

Defendant also argues that it is reasonable and customary for experts to rely on the statements of others, including the declarations of others. While this general proposition is true, it is only "reasonable" for an expert to rely on the statements of others if

---

7. It is also worth noting that the fact that questionnaire responses were collected in a declaration format does not assist Defendant. In both *Pittsburgh* and *Gibson,* cited above, the information also was obtained in declaration form. This

did nothing to dissuade the courts from finding that the declarations constituted improperly conducted surveys.

8. Indeed, given Haworth's consistent references to the Store Manager survey in her deposition

the statements or declarations were collected through methods calculated to elicit reliable information. Notably, the cases cited by Defendant involved instances in which *the expert* interviewed certain agents of the party, and the courts, after undertaking a Federal Rule of Evidence 702/703 analysis, concluded that it was reasonable for the experts to rely on the statements obtained under those circumstances. *See, e.g., Int'l Adhesive Coating Co. v. Bolton Emerson Int'l Inc.,* 851 F.2d 540, 545 (1st Cir.1988); *United States v. Affleck,* 776 F.2d 1451, 1457 (10th Cir.1985). None of Defendant's authorities permit an expert to rely on responses to questionnaires designed and administered by the party's counsel during litigation.

Accordingly, the Court grants Plaintiffs' motion and strikes references to the Store Manager survey from Dr. Haworth's declaration. The Court notes, however, that this ruling does not mean that Dr. Haworth's statistical analysis or results are excluded. It only means that she cannot rely upon the survey of store managers to attack Dr. Drogin's aggregated analysis or as support for her decision to conduct a disaggregated analysis.[9]

## II. MOTIONS TO STRIKE NON–EXPERT TESTIMONY

A. *Defendant's Motion to Strike Portions of the Declarations of the Named Plaintiffs and Designated Class Members*

■ In support of their Motion for Class Certification, Plaintiffs filed 114 declarations from the named plaintiffs and selected class members around the country. Defendant moves to strike portions of each declaration on various evidentiary grounds. All told, defendant has raised hundreds, if not thousands, of objections.

Defendant fails, however, to *discuss* any of the objections individually. Rather, defendant merely highlights multiple portions of each declaration (each portion ranging from a few isolated words to over a paragraph) using six different colors to correspond to different generic objections (e.g. blue for hearsay, gray for best evidence rule, yellow for relevance) and asserts that "[n]early all objections are obvious on their face." Def.'s Reply to Mtn to Strike Declarations of Named Plaintiffs at 1; Berry Decl., Vols. I—IV.

First, one of the colors used (pink) can apply to any one of five objections (lack of personal knowledge, no foundation, conclusory, speculative or inadmissible opinion). Thus, Defendant has failed even to identify the generic objection at issue in many cases. Second, it is not obvious why many objections have been asserted and it is not the Court's role to divine Defendant's arguments. Third, Defendant appears to have made indiscriminate blanket objections. For example, Defendant appears to object to virtually all out-of-court statements as hearsay without making any effort to assess whether the statement is submitted for the truth of the

and expert report, her sudden abandonment of this terminology in her declaration filed in opposition to plaintiffs' motion for class certification rings hollow. *See, e.g.,* Haworth Decl. ¶ 20 (referring instead to "declarations signed under oath by Store Managers who were randomly selected (according to scientifically accepted statistical methods)"). Nor can Defendant meet its Federal Rule of Evidence 703 burden simply by pointing to Dr. Haworth's wholly conclusory assertion that the store manager declarations "are an appropriate source to support a regression model." Haworth Decl. ¶ 186, n. 114. An expert's conclusory assertion that his or her testimony is based on a type of data upon which experts reasonably rely is not sufficient to survive a Rule 703 challenge. *In re Paoli R.R Yard PCB Litigation,* 35 F.3d 717, 747–48 (3rd Cir.1994); *Yapp,* 301 F.Supp.2d at 1035–36.

9. The Court further notes that granting this motion does not have a material impact on the class certification decision. At most, the survey results, if admitted, would merely support Dr. Haworth's disaggregated analysis as *one* possible way of analyzing the data. The survey would not provide sufficient additional weight to Defendant's challenge to Dr. Drogin's analysis to sway the Court from its conclusion that his testimony supports an inference of discrimination, and thus the existence of substantial questions common to the class. *See* Order re Class Certification, section I.B.2.a.(2)(a) (discussing Dr. Drogin's statistical analysis); *see also* Haworth Decl., Appendix Vol. 2, Tab 16 (tabulation of survey results showing that the majority of the pay rate factors were only considered by a very small percentage of Store Managers).

matter asserted or whether the statement falls within a hearsay exception.[10]

As Plaintiffs correctly object, Defendant's attempt to assert these objections without providing any individualized discussion is procedurally defective. The objections therefore merit summary denial on the ground that they are unduly vague. Indeed, Defendant's grossly overbroad approach is more suggestive of an intent to harass than a good faith effort to address genuine objections. Additionally, the Court's review of a portion of the objections indicates that they are largely without merit.[11] Finally, even were the Court to exclude some limited portion of some class declarations, the Court is satisfied that it would have no bearing on the outcome of Plaintiffs' motion for class certification. Accordingly, Defendant's motion is denied.

### B. Plaintiffs' Motion to Strike Store Manager Declarations

 As discussed above, the Court grants Plaintiffs' motion to strike references to the store manager survey from Dr. Haworth's declaration. Defendant has, as a separate matter, also individually filed each of the 239 store manager declarations as anecdotal, percipient witness evidence. Plaintiffs move to strike these declarations as a sanction under Federal Rule of Civil Procedure 37(c)(1) because Defendant did not timely disclose 215 of the 239 store managers pursuant to Rule 26(a)(1).[12] Plaintiffs also seek to recover their fees and expenses incurred in bringing this motion. Defendant responds that Plaintiffs have failed to meet the standard for demonstrating that the declarations should be excluded under Rule 37(c)(1).

As discussed above, in order to exclude evidence under Rule 37(c)(1), the court must find that the Rule 26(a) violation was both unjustified *and* prejudicial to plaintiffs. *See* Rule 37(c)(1); *Salgado,* 150 F.3d at 742. Defendant does not advance any grounds justifying its failure to disclose the information. Plaintiffs, however, fail to establish sufficient prejudice. In Plaintiffs' opening brief they did not even assert that they suffered actual prejudice from the violation. In Plaintiffs' reply, they argue that they were prejudiced because they were prohibited, under the Court's Case Management Order, from taking the depositions of any store managers (other than those who supervised the named plaintiffs); they do not indicate, however, that they would have actually deposed any of the 215 managers even if given the opportunity. Nor do they explain how the inability to depose the store managers has harmed them. Since the Court does not find both lack of justification and prejudice, Plaintiffs' motion is denied.

### CONCLUSION

For the reasons set forth above, and good cause appearing, it is HEREBY ORDERED as follows consistent with the above:

*Plaintiffs' Motions*

1. Motion to Strike Portions of Declaration of Joan Haworth for Failure to Comply with Fed.R.Civ.P. 26(a)(2) is DENIED.

2. Motion to Strike Portions of Declaration of Joan Haworth (Re Store Manager Survey) is GRANTED. The following portions of Dr. Haworth's Declaration shall be stricken (references are to pages and lines): 12:7–17; 14:11–12; 29:10–14; 36:17–18 & n. 42; 83:9–12 & n. 98; 83:20 to 84:1 & n. 100; 93:3 to 99:4; 141:14–16 & n. 246; 142:16–17 & n. 249; 174:20 to 175:2.

---

**10.** The Court also notes that Defendant wrongly asserts that any testimony regarding events that occurred prior to the class period (i.e. pre-dating October 1997) is irrelevant. Even though such incidents are not independently actionable, such evidence still may be admitted as relevant background evidence supporting Plaintiffs' claims. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Bouman v. Block,* 940 F.2d 1211, 1218 (9th Cir.1991).

**11.** The Court, for example, has reviewed the objections to the named plaintiffs' declarations and concludes that the objections typically overreach and at best go to the weight of the evidence rather than its admissibility.

**12.** Fed. R. Civ. Proc. 26(a)(1) provides that parties must make an initial disclosure of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses.

3. Motion to Strike Store Manager Declarations is DENIED.

*Defendant's Motions*

1. Motion to Strike Declaration, Opinion, and Testimony of Plaintiffs' Expert William T. Bielby is DENIED.

2. Motion to Strike Declaration of Mark Bendick is DENIED.

3. Motion to Strike Portions of Declaration of Richard Drogin is GRANTED.

4. Motion to Strike Portions of the Declarations of Named Plaintiffs and Designated Class Members is DENIED.[13]

**IT IS SO ORDERED.**

13. For the record, the Court notes that at a July 25, 2003 status conference, this Court also denied Plaintiffs' Motion to Strike Declarations of 10 Undisclosed Witnesses. It also granted Defendants' motion for leave to file a surreply in opposition to the Plaintiff's Motion for Class Certification given that Defendant had already filed the surreply. The Court noted, however, that the filing of the surreply was not justified and deserved little or no weight.